## BROWN *v*. BROWN.

### (*Nashville.*   January 27th, 1888.)

1. WILLS.   *Construction.   Conditional limitation.   Perpetuities.*

   A testator bequeathed property to his two children jointly. The will provided that if either should die without children or their issue living at his death, the survivor should take the whole; and that if both should so die without children, then the entire property should go to the children of testator's sister, E. S., and brother, H. B., *per capita*, the children of deceased ones taking their respective parents' shares. Both children survived the testator, and died childless.

   *Held:* That the limitation over to the children of E. S. and H. B. is not void for remoteness, and took effect upon the death of both of testator's children.

   Cases cited and approved: Cowan *v.* Wells, 5 Lea, 683; Booker *v.* Booker, 5 Hum., 508; 5 Paige, 172; 11 Paige, 185; 2 Mass., 56; 26 Md., 119; 1 East, 452; 13 Wend., 539; 7 Term, 102; 10 Bing., 147.

2. SAME.   *Same.   Same.   .Same.   "Unborn child of an unborn child."*

   Where, as in this case, the contingency upon which the bequest over is to take effect *must*, by the very terms of the will, happen, if ever, within the period of a life or lives in being at testator's death and twenty-one years and the fraction of a year thereafter; the limitation over is valid, although it *may* result that the "unborn child of an unborn child" takes thereunder.

Brown *v.* Brown.

3. JURISDICTION. *Supreme and Chancery Courts. Application for leave to defend after final decree.*

The Chancery Court from which the cause was appealed, and not the Supreme Court, has jurisdiction of an application, made after final decree in the Supreme Court, for leave to answer and make defense under §§ 5122–5124 (M. & V.) Code, permitting defendants who have been proceeded against without personal service of process or appearance to answer and make defense after final decree, on leave of Court obtained upon petition showing merits.

Code cited: §§ 5122–5124 (M. & V.); §§ 4379–4381 (T. & S.)

4. CHANCERY PLEADING AND PRACTICE. *Application for leave to defend after final decree. Code, Sections 5122–5124 (M. & V.), construed. Merits of petition.*

The petition for leave to defend after final decree, under §§ 5122–5124 (M. & V.) Code, must disclose "merits;" and this may be done either by assignment of errors of law or fact upon the original record, or by the averment of additional facts *aliunde.*

5. SAME. *Same. Same. Notice of filing petition.*

Reasonable notice of the filing of the petition should be given the opposite party before it is acted on by the Court, but regular process need not issue.

Cases cited: 1 Heis., 452; 4 Heis., 672; 5 Heis., 388; 11 Lea, 66.

6. SAME. *Same. Same. Motion to dismiss the petition.*

Motion to dismiss the petition is the proper practice to test its sufficiency; and in deciding this motion the Court will look alone to the petition in connection with the record.

7. SAME. *Same. Same. Answer to petition not allowed.*

No defense to the petition, by *answer*, is allowed. If upon its face the petition shows sufficient merits, and is not fatally contradicted by the record, no facts *aliunde* can be set up to defeat the petitioner's right to answer and defend in the original cause as if it "were then newly begun."

Cases cited: 3 Hum., 450; 2 Swan., 538; 1 Sneed, 294; 3 Sneed, 327; 1 Head, 625; 2 Bax., 18; 2 Sneed, 698; 2 Cold., 236; 9 Heis., 179; 12 Heis., 333.

8. SAME. *Same. Same. Petition need not exhibit answer.*

As the petition is merely for leave to answer, it need not be accompanied by the answer.

9. SAME. *Same. Same. Time to file petition.*

Where application is made to the Chancery Court for leave to answer and defend after final decree in the Supreme Court, the three years

Brown *v.* Brown.

within which the application is required to be made by ¿ 5124 (M. & V.) Code, runs from the date of the decree in the Supreme Court.

Code cited : ¿ 5124 (M. & V.) ; ¿ 4381 (T. & S.)

10. SAME. *Same. Same. Service of copy of decree.*

That petitioner's right to make defense is barred by the lapse of six months after service of copy of decree upon him, as provided by ¿ 5122 (M. & V.) Code, is not available to defeat his application, unless it should appear in the record; but may be advanced by supplemental bill in the original cause.

11. SAME. *Same. Same. How notice of decree is given.*

The service of copy of decree authorized and directed by ¿¿ 5122–5124 (M. & V.) Code need not be an official service, but may be proven by any competent testimony.

Code cited : ¿¿ 5122–5124 (M. & V.) ; ¿¿ 4379–4381 (T. & S.).

12. SAME. *Same. Same. Defendant served with process.*

A defendant who was served with process, though joined with others who were not, is not entitled to the privileges conceded to the latter by ¿¿ 5122–5124 (M. & V.) Code.

13. SAME. *Same. Same. Sections 5122–5124 applicable.*

The provisions of ¿¿ 5122–5124 (M. & V.) Code are applicable to cases for *construction* of wills.

Code cited : ¿¿ 5122–5124 (M. & V.) ; ¿¿ 4379–4381 (T. & S.)

Cases cited and distinguished : 3 Cold., 544 ; 8 Yer., 186 ; 7 Hum., 320 ; 1 Head., 595 ; 5 Cold., 72 ; 4 Cranch, 437 ; 9 Cranch, 144.

14. SAME. *Parties. Members of a class.*

"Where it is attempted to proceed against two or three individuals as representing a numerous class, it must be alleged in the bill that the suit is brought against them in that character," otherwise the other members of the class will not be affected by the proceedings.

Case cited and approved : 5 Madd. Ch., 15, 16.

Cases cited and distinguished : McCaleb *v.* Crichfield, 5 Heis., 288 ; 1 Paige, 420 ; 2 Paige, 18.

---

FROM MAURY.

---

Appeal from Chancery Court of Maury County. W. S. FLEMING, Ch.

Brown *v.* Brown.

Petition for leave to answer and make defense after final decree, under the provisions of §§ 5122–5124 (M. & V.) Code.

The petitioners were defendants in the case of *John P. Brown* v. *H. A. Brown and others,* which was brought for the construction of John Brown's will, and was determined in the Chancery Court of Maury County in favor of defendants, but was reversed on appeal, and decided by the Supreme Court in favor of the complainant. The petitioner, H. A. Brown, was served with process in that case, but the other petitioners, being non-residents, were proceeded against by publication.

The petition was filed within three years after final decree in the Supreme Court, but more than three years after the decree in the Chancery Court, from which the appeal was taken. The case was not remanded by the Supreme Court.

The Supreme Court having refused to take jurisdiction of petitioners' application, they filed this petition in said Chancery Court against the complainant, John P. Brown. The Chancellor dismissed the petition, on motion, and petitioners appealed.

Geo. P. Frierson, Demoss & Malone, W. B. Gordon, Hayes & Floyd, and Padgett & Figures for Petition.

Webster & Taylor, Hughes & Hatcher, N. R. Wilkes, and Fleming & Son, *contra.*

Brown *v.* Brown.

M. M. Neil,* Sp. J. In June, 1858, John Brown died in Maury County, leaving a widow and two children, a son and daughter, surviving him. He was the owner of a very large estate. He left a will, which was duly probated in July, 1858. After providing for the payment of his debts, the comfort of his widow, and the maintenance of his children during the minority of his son, this will proceeds:

"Item 4. Upon the coming of age of my son, and after the division and allotment to my wife, as aforesaid, shall have taken place, I will and direct that the residue of my real and personal estate be equally divided between my two children.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Item 5. I will and direct that the property, real and personal, which my children shall take under this will shall, upon the death of either of them without leaving a child or children, or the issue of such child or children, living at his or her death, go to the survivor of them; and should both of my children die without leaving a child or children living at their death, then, and in that event, I direct that the property given to them as hereinbefore provided, embracing that which they may get as survivor, shall go over to and be

---

* Judge M. M. Neil, of the Trenton bar, was appointed by the Governor, on the 18th of January, 1888, to serve during the temporary absence of Judge Caldwell.

equally divided among the children of my deceased sister, Elizabeth Stewart, and of my brother, Hamilton Brown, taking *per capita;* and in case any of said children should be dead, but leaving children then living, such child or children shall represent the deceased parent, and take such interest as said parent would have taken if alive."

The controversy arises on these two items.

Testator's daughter died in 1858 without issue. March 1st, 1878, testator's son, John P. Brown, filed his original bill in the Chancery Court of Maury County, asking a construction of the said fourth and fifth items of his father's will, insisting that the limitations over, contingent upon the death of his sister and himself without issue living at that time, were void, and claiming the whole estate. This bill was filed against H. A. Brown and his two children, Thomas and Hamilton, citizens of Maury County, and James Stewart, Jane Collett, Ann Pointer, and others, the children and grandchildren of Elizabeth Stewart, deceased. H. A. Brown is the son of Hamilton Brown, mentioned in the fifth item of the will. Process was issued and served upon him and his two children. Publication was made for the non-residents, save two omitted by mistake. H. A. Brown answered the bill, raising a single issue, denying the construction placed upon the will by the bill, insisting that the limitations over were valid. Guardian *ad litem* was appointed for Thomas and Hamilton Brown, and he

Brown *v.* Brown.

answered, making the same issue. An order was entered purporting to appoint a guardian *ad litem* for all such of the non-resident defendants as might be minors, but no names of such were given in that order. The guardian *ad litem* so appointed filed his answer making the same issue. An order was entered directing judgment *pro confesso* against all the non-resident defendants save such as might be minors.

In this state of the pleadings the cause came on for hearing, and the Chancellor decreed in defendant's favor, construing the fifth item of the will as creating a valid executory devise in favor of the children of Elizabeth Stewart and Hamilton Brown, and dismissed the bill. The complainant, John P. Brown, appealed to this Court. This was in November, 1878. Pending this appeal, the General Assembly passed the Act of March 25th, 1879, entitled "An act to relieve the dockets of the Supreme Court of Tennessee of the great number of cases now encumbering them, and for the appointment of a special commission," commonly known as the Commission Court. On the first Monday in October, 1879, this cause was heard before the Commission Court, and held under advisement until the 20th of January, 1880, on which day a decree was rendered by that Court, whereby the decree of the Chancellor was declared to be erroneous, and was reversed. The decree of the Commission Court set forth and construed the fifth item of the will, and declared void the executory devises of that item to

the children of Elizabeth Stewart and Hamilton Brown, and adjudged the complainant, John P. Brown, to be the absolute owner in fee-simple of all the property and estate devised and bequeathed by the will to himself and his sister. This decree was certified by the Commission Court to this Court for approval, and was approved in ordinary course as other causes certified from that tribunal.

Pending this suit John P. Brown married, and one child was born to him. This child died in October, 1881. On the first day of January, 1882, John P. Brown died without issue living at his death, but leaving surviving him his wife, Maggie C. Brown. He left a will under which his widow and his nephew, Roy Alexander, and his niece, Mamie Cole, are claiming the estate; and in this will Wiley J. Embry was nominated executor, and was duly qualified; and all these parties are properly represented in the record. It is not necessary to the settlement of the questions arising in this cause to notice the will of John P. Brown in terms more particular.

On the 9th day of March, 1882, J. T. Stewart, and all others entitled in the Elizabth Stewart interest, presented their petition to this Court, in which, along with other grounds of relief not necessary now to notice, they sought to have the decree of January 20th, 1880, opened under the provisions of the Code, §§ 4379–4381 (New Code, §§ 5122–5124), providing for a three years' saving in behalf of non-resident defendants not served

with process.    This application was refused, on the ground that the granting such relief in that form would involve the exercise of original jurisdiction; and it was further held that the redress secured by these provisions should be sought in the Court of original jurisdiction.

At the April term, 1882, of the Chancery Court of Maury County these same parties presented their petition to that Court, reciting the foregoing facts, and others not now necessary to notice, insisting that, under a proper construction of the said fifth item of the will, they were entitled to the estate, and asking to have the decree opened under the sections of the Code above cited, and accompanied the petition with bond for costs, and prayed leave of the Court to file it.    Thereupon, the Court ordered the .petition, exhibits, and bond to be filed, subject to all lawful defenses and exceptions, including the right of the persons made defendants thereto to move the Court to take the petition from the files; and further ordered that process issue, as prayed for in the petition, against Wiley J. Embry, executor of John P. Brown, Maggie C. Brown, his widow, the nephew, Roy Alexander, and his guardian, E. H. Hatcher, and likewise against Mamie Cole, returnable on the first Monday in October, 1882, that being the first day of the next ensuing term.

The petition was filed on the 27th day of April, 1882, and the process was duly issued and executed. At the October term, 1882, Wiley J. Embry, ex-

ecutor, Maggie C. Brown, and E. H. Hatcher, guardian, moved the Court to strike the petition from the files. This motion was sustained by the Chancellor. The petition was accordingly stricken from the files of the Court. The petitioners prayed an appeal to this Court. The cause was tried before the Referees. Their report was filed May 4th, 1885. Both sides except, and the whole case is open.

The sections of the Code under which the questions made in this case arise are as follows. After providing for suits brought by attachments of property, the Code proceeds:

"Section 4379. In all other cases a decree against a defendant, without personal service of process, who does not appear to defend, is not absolute for three years from the decree, unless a copy of the decree is served upon the defendant, in which case it becomes absolute if the defendant fails to come forward and make defense within six months after service."

Section 4380 is not important in the present inquiry.

"Section 4381. The original defendant, his heir, representative, or assignee, claiming under him by virtue of any act done before the commencement of the suit, may, within six months after service of a copy of the decree, or within three years after the decree, be admitted to answer the bill, upon petition showing merits and giving security for the payment of costs; and witnesses on both sides

may be examined, and such other proceedings may be had thereon as if the cause were then newly begun."

Many grounds were assigned in support of the motion to dismiss in the Chancery Court, and the same grounds are relied on here.   Leaving out of view for the present the fourth and seventh ground, the others may be summarized as follows: That a final decree having been rendered in this cause in the Chancery Court in November, 1878, and appeal having been prosecuted to the Supreme Court, and final decree entered in the Supreme Court, there was and could be, when the petition was filed, no such cause in the Chancery Court as *John P. Brown* v. *H. A. Brown et al.*—this cause—and that this petition was unknown to the forms of law; that the petition was an effort to re-instate or rehear a cause finally disposed of both in the Chancery and Supreme Courts; that it was an effort to review the decision of the Supreme Court on a question of law; that the decree of the Supreme Court was a decision on the merits, and a final adjudication between the parties in matters both of law and fact, and could not be again inquired into in this form; that the petition failed to show any other or additional fact not fully passed upon and adjudicated already by both the Chancery Court and the Supreme Court; that the petition was an effort to attack the decision of the Supreme Court, and this could only be done by original bill; that being professedly a proceeding under §§ 4379–4382 of

the Code, the petition should be accompanied by an answer showing merits, and that not being so accompanied the omission was fatal; that the petition was not filed in time, more than three years having elapsed since the final decree in the Chancery Court.

We are of opinion that, although a final decree had been entered in this cause in the Chancery Court more than three years before the presentation of the petition, and an appeal had been prosecuted by the complainant from that decree to the Supreme Court, and judgment final had passed in the Supreme Court, the petition was properly presented to the Chancery Court within three years of the final decree in the Supreme Court. We reaffirm the ruling heretofore made when the petition was presented to this Court: That to allow a petition under these sections of the Code to be presented to this Court would be to invoke the exercise of original jurisdiction by this Court, whereas it has only appellate jurisdiction. 6 Bax., 95; 9 Lea, 21. Hence, if the non-resident has no remedy in the inferior Court, the statute would be a dead letter, for the reason that the resident litigant could, by appealing to this Court, always place the decree in a condition where it could not be disturbed. He could reply to the non-resident's application: "You have no standing in the Supreme Court, because that Court cannot exercise original jurisdiction; you have no standing in the Chancery Court, because the decree is vacated by the appeal,

and there is nothing there to act upon." The statute offers substantial relief to persons who need protection—defendants who have not been served with process—and we are of opinion that it cannot be whittled away in this fashion.

Nor is it in any aspect an effort to review the action of the Supreme Court. It is not a proceeding for the correction of errors in any sense. But where the case provided for in the statute is made out, then the condition that by operation of law inheres in every decree against non-residents not served with process and not legally appearing in the cause, emerges; and where a petition in proper form is presented to the proper court, and contains the averments required by the section of the Code referred to, a way is at once opened for the judicial ascertainment of the status which renders the decree null by reason of the infirmity that inheres in it through the implied condition imposed by law; and where the Court adjudges that the petition is in proper form, and contains the matters of substance required by the sections named, then, by the allowance of its unconditional filing, *ex vigore statuti*, the decree before entered is annulled, and the original status is restored.

Nor do we think it necessary that the petition should be accompanied by an answer. The language of the statute is that the non-resident "may be admitted to answer the bill upon petition showing merits and giving security for the payment of costs." He is first to acquire his status by the

presentation of a petition, and if the petition shall be adjudged good and sufficient, *then* he is admitted to answer.

The fourth ground presents the point that the original bill was a suit against a class of persons having a common right of defense, and that a decree against the representatives of the class before the Court would be binding on the whole class; and hence that the case would not fall under the sections of the Code cited. Not deciding the point that such a case would or would not, as to the non-residents, fall under the statute, on inspection of the original bill we find that the persons made defendants therein are not proceeded against as a class of persons. This is indispensable in order to invoke the operation of the chancery rule on that subject: "Where it is attempted to proceed against two or three individuals as representing a numerous class, it must be alleged that the suit is brought against them in that character." *Lanchester* v. *Thompson,* 5 Madd. Ch. Rep., 15, 16. In the case at bar the defendants were proceeded against individually under the license given in subsections 1, 4, and 5 of Section 4352 of the Code, and no attempt whatever was made to fix upon any of them a representative character, either within the letter or spirit of the chancery rule.

The seventh ground assigned for dismissing the petition makes the point that the petition shows no merits. This necessitates a construction of the fourth and fifth items of the will above quoted.

We are of opinion that by the terms of these items of the will the testator intended to give to his son, John P. Brown, and to his daughter, each, one-half of his estate in fee, but on the death of either without issue then living, then to the survivor in fee; and on the death of such survivor without issue living at his or her death, then *per capita* to the children of Hamilton Brown and Elizabeth Stewart; and in case any of said children of Hamilton Brown or Elizabeth Stewart should at that time be dead, leaving children, then such last mentioned children to represent their immediate ancestor, and take the estate such immediate ancestor would have taken in case he or she had survived testator's son and daughter.

It is insisted that this operates to create a perpetuity; that it is, in effect, a devise to the "unborn child of an unborn child," or may, per possibility, result in that, and hence is void. We concede the point that for the purposes of this construction the will must be looked to as matters stood at the death of testator, when it went into effect, and that subsequent events cannot be noticed in aid of the construction; and that if, on a fair construction of the will as matters then stood, it is open to the legal possibility of producing a result violative of the settled policy of the law, it must be declared void. It is conceded that a devise *eo nomine*, to the "unborn son of an unborn son," would be void for remoteness, and be in violation of the rule against perpetuities. It is con-

tended, however, that although there be no such devise in terms, yet if such a result *may* happen under the provisions of the will, then the will is void, as violative of the law against perpetuities. It is conceded that such a result might happen under this will; as, that Hamilton Brown might have a son after the death of testator, and that son might have a son who would be living at the death of the survivor of the first taker without issue then living, and that if this last-mentioned son should take under the will, then that would be the case of an unborn son of an unborn son taking the devise.

The misapprehension arising out of this circumstance will be cleared up by a consideration of the rule that "a devise to the unborn son of an unborn son is invalid" in connection with the broad general rule governing this class of inquiries, wherein it will be seen that the rule just quoted presents but a particular aspect, as it were, of the general rule, and is, so to say, but a corollary of it.

"To constitute a valid executory devise, the contingency upon which it is to take effect must occur within a life or lives in being and twenty-one years and a fraction of a year afterward." *Booker* v. *Booker*, 5 Hum., 508; 4 Kent, 295 and 317; 1 Jarmon on Wills, 518; 2 Redfield on Wills, 845; 1 Wash. on Real Prop., p. 97, Sec. 57.

This is the fundamental and controlling rule underlying the doctrine against perpetuities, and is to be applied to the will at the death of testator;

and if at that time the devise shall be too remote, it is fatal, and the limitation over is void.   2 Wash. on Real Prop., 676, 678; 2 Redfield on Wills, 849; 1 Jarmon on Wills, 519; *Barnum* v. *Barnum,* 26 Md., 119; 90 Am. Dec., 95.

Mr. Washburne says: "As will be shown hereafter, it has become an imperative and unyielding rule of law   *   *   *   that no estate can be given to the unborn child of an unborn child." 1 Wash. on Real Prop., p. 97, Sec. 57.   "The rule already mentioned is one of universal application that a limitation to the issue of an unborn person would be, under all circumstances, too remote, and void if he is to take as a purchaser."   2 Wash., p. 667, Sec. 8.

This rule is laid down strongly also in *Brudenell* v. *Elwes,* 1 East, 452, 454; *Jackson* v. *Brown,* 13 Wend., 442, 443; and see 2 Wash., 539; and, thus broadly enunciated, seems to sustain complainant's contention.   But we apprehend there is a distinction.   Lord Kenyon, who delivered the opinion in *Brudenell* v. *Elwes,* said in *Long* v. *Blackwell,* 7 Term Rep., 102: "It is an established rule that an executory devise is good if it must necessarily happen within a life or lives in being and twenty-one years and the fraction of another year, allowing for the period of gestation."   In *Wilkinson* v. *South,* 7 Term Rep., 558, the same learned Judge again says: "The rule respecting executory devises is extremely well settled, and a limitation by way of executory devise is good if it must take place

after a life or lives in being and within twenty-one years and the fraction of another year afterwards." And see *Cadell* v. *Palmer*, 10 Bing., 147.

"Indeed, it is clear, from *Cadell* v. *Palmer*, that even a long succession of estates for life to unborn persons and their issue is valid, if subjected to the restriction that in order to take they must come into existence during lives in being and twenty-one years afterward." 1 Jarmon on Wills, 548.

"It seems to be settled that a devise to an unborn person will be valid if the will provides that in order to take they must come into being during the continuance of lives in existence and twenty-one years." 2 Redfield on Wills, 850, Sec. 19.

"Whatever may be the number of limitations after the first executory devise or limitation by deed by way of springing or shifting uses of the whole interest, any one of them which is so limited that it must take effect, if at all, within twenty-one years after the period of a life then in being, may be good in event that no one of the preceding executory limitations which would carry the whole interest happens to vest." 2 Washburn on Real Prop., 354 (margin).

In the case of *Coster* v. *Lorillard*, 5 Paige, 172, the devises were of this character: "To trustees in fee, in trust to receive the rents and profits, and pay over and divide the same equally between twelve nephews and nieces, and the survivors and survivor of them, during their lives, respectively; and after the death of all the testator's nephews

and nieces, remainder in fee to the children of the twelve nephews and nieces living, and to the children of such as may then be dead, *per stirpes.*"

Chancellor Kent, in commenting on this case, says: "The will would have been good under the English law, and the law of New York as it stood before the Revised Statutes of 1830." 4 *Kent*, 272, *note b.*

In this case some of the devisees might have been the unborn children of unborn children, as matters stood at testator's death.

In the *Matter of Ryder*, 11 Paige, 185, rents, and profits, and income of real and personal property, were devised and bequeathed to a *feme-covert* for life, for her separate use, free from the control of her then husband, or of any future husband, with remainder to her surviving children, and to the issue of such of her children as should have died leaving issue at the time of her death.

"Here," the Court says, "the children have only a contingent interest, even in the capital of the estate; and the extent, even of that contingent interest, cannot be ascertained while the mother is alive and is capable of bearing children; for the afterborn children are equally entitled with those who are *in esse* at the death of testatrix. And such of the children as may happen to die in the lifetime of their mother will have no right to the estate, even if they should leave issue, for the estate, in that event, is given to the issue, and not to them."

These limitations were recognized and treated as of undoubted validity.

The distinction resides in this : A devise to the unborn child of an unborn child, *eo nomine*, is void, because it *may not* take effect within a life or lives in being, and twenty-one years and the fraction of a year thereafter.; but when by the express terms of the devise the limitation over *must* take effect within the life or lives of persons in being, then the reason supporting the objection fails, and the limitation is good.

The opinions in the Eden will case, reported in 2 Cowan, 333, do not involve the present controversy. By the terms of that will the testator's brother and sister were to take his property in the event that his two sons, the first takers, should both die without lawful issue. The ulterior devise was held void, because limited upon a contingency too remote — the indefinite failure of issue of the two previous devisees. And see *Waring* v. *Jackson*, 1 Pet., 570.

This objection cannot be urged against the will now under consideration. Here, by the express terms of the will, the limitations over are to take effect immediately upon the death of the survivor of testator's two children, lives in being at the date of the will and at the death of testator; hence, the contingency upon which the estate is to vest cannot, by any possibility, be for a longer time than a life or lives in being, and twenty-one

years and the fraction of a year thereafter, and under all the authorities must be held good.

In truth, the estate devised to John Brown's children was a fee, determinable upon their dying without issue living at their death. On the general principles governing contingent estates, it would seem that no estate could be limited to take effect after a fee-simple; but under the doctrine of uses and executory devises this is often done. 1 *Washburn on Real Prop.*, p. 76, § 76.

" A devise in these words, 'I give unto my three sons — A., B., and C., — all my other lands, etc.; also, my will is, that if either, or any, of them should die without children, the survivor, or survivors, to hold the interest or share of each, or any, of them so dying without children, as aforesaid,' passes an estate in fee-simple, determinable on the contingency of their dying without issue, and on that contingency vesting in the survivor, or survivors, by way of executory devise." *Richardson* v. *Noyes,* 2 Mass., 56.

By one clause of a will an absolute estate in land was vested in testator's son; by a subsequent clause it was provided that if the son should die without heirs, the land should be divided between testator's three daughters. It was held that the latter clause raised an executory devise over in favor of the daughters, upon the contingency of the son dying without heirs or children; that if the contingency happened, the limitation over took

effect; if it did not happen, the absolute gift to the first taker remained undisturbed. *Cowan* v. *Wells*, 5 Lea, 683, 684.

In the case now in judgment the contingency happened, and we have seen that the limitations over do not violate any principle of law.

So we conclude that II. A. Brown and the children of Elizabeth Stewart took a valid estate in fee, *per capita*, on the death of John P. Brown; and that the places of such of Elizabeth Stewart's children as are dead are filled by their children; and in showing this in their petition the non-residents showed merits under the statute.

But here we are met by the objection that the merits required in the statute must be some new fact not passed upon by the Court before, and that it cannot be an issue of law. We do not agree to this view. The purpose of the statute was to place the non-resident who comes within its saving in the same plight as if the cause were then newly begun—when he presents his petition and is admitted to defend; that is, to place him in the same status as if the cause were just standing for defense. It is obvious that by this construction he could make an issue of either law or fact. Any other construction would be but to offer a benefit with one hand, and withdraw it with the other.

We are, however, confronted with the case of *Ledgerwood* v. *Miller*, (MSS., Knoxville,) and it is pressed upon our attention as an authority oppos-

ing this view. We do not understand that case as being in necessary conflict. In that proceeding application to open the cause was made by affidavit, which failed to show any merits whatever, either of law or fact; and this point was specially alluded to and relied upon by Deaderick, C. J., in the opinion; and what was said on the subject of the answer was not necessary to the decision of the question involved. However, if that case could be properly construed as in conflict with the principles herein settled, we should not hesitate to overrule it as being unsound and mischievous in its consequences.

II. A. Brown's rights stand on a different footing. He has had his day in court. He now joins in the petition with these non-residents, and seeks with them to have the decree opened, to be again allowed to litigate the issue. He alleges certain special grounds of relief, impeaching the proceedings of the Commission Court. We express no opinion as to the questions made by him on the decree of the Commission Court. We hold that he cannot make these questions by joining in a petition with non-residents seeking to have the benefit of the statutory saving, and certainly cannot have the relief vouchsafed to non-appearing defendants only. If he has any rights left, which we do not decide, he should have presented them by an original bill.

The decree of the Chancellor is accordingly affirmed in so far as it dismisses the petition as to

H. A. Brown, and is reversed in all other respects, and the report of the Referees is confirmed; and the cause is remanded to the Chancery Court of Maury County, to be proceeded in as to the non-resident petitioners "just as if the cause were newly begun."

## ON PETITION TO REHEAR.

The following opinion was delivered on petition to rehear:

M. M. NEIL, Sp. J. This cause was decided at a former day of the term, and an opinion was then delivered construing Code, Sections 4379–4381 (New Code, 5122–5124), in some points, adjudging the validity of certain clauses in the will of John Brown, deceased, and their meaning, sustaining the petition to open the decree rendered within three years next before the filing of the petition, and remanding the cause to the Chancery Court of Maury County, to be proceeded in as if newly begun.

We are now asked to rehear the cause, and to so modify the decree as to permit an answer to the petition, to the end that complainants may therein show cause why the decree should not be set aside, either by denying the facts alleged, or by bringing forward any such other facts as will show that said petition should not be sustained; as, that petitioners had notice of the decree under

the statute, or that the resident defendant, H. A. Brown, was the owner, by purchase, of all the interests when the first decree was rendered, so that a decree against him would bar all the interests; "or, that if he bought such interests subsequent to the decree, that this is a champertous suit to open the cause in their name;" or any other fact vital to the petition.

We do not, think the statute contemplated that a side issue should be made and fought out upon the petition. Nor yet was it intended that any substantial rights of the complainants should be impaired by the opening of the cause; further than the mere fact of granting a retrial may be said to impair rights. The gist of the matter is, that whereas the cause has been heretofore tried, and the rights of certain persons determined without their being heard in their own defense, they being absent, and having no legal, actual notice of the proceedings; they are now, within the statutory period, allowed to come in and be heard. The Court has simply ordered that the cause do now stand for answer, as if newly begun.

This order is made upon a particular state of facts, as shown by a petition filed in the cause, taken in connection with the other parts of the record in the particular controversy under consideration. The complainants in that cause cannot justly complain. They have invited the defendants to meet them and contest the matters set out in

the bill, and the Court has only ordered that the defendants do now enter upon that contest.

Whether the other elements that complainants now desire to add to the controversy have any merit in themselves, or any existence, in fact, we cannot consider, because there is nothing whatever in the record on the subject. We may, however, make this remark, on complainants' suggestion that they should have the right to show notice of the decree under the statute: The language of the statute is:

* * "A decree against a defendant without personal service of process, who does not appear to defend, is not absolute for three years from the decree unless a copy of the decree is served upon the defendant, in which case it becomes absolute if the defendant fails to come forward and make defense within six months after service." New Code, Section 5122. "The original defendant, his heir, etc., * * may within six months after service of a copy of the decree, etc." * * * New Code, Section 5124.

We are of opinion that the service of a copy of the decree here spoken of need not be an official service, but may be proven by any competent testimony; and we are further of the opinion that when such service has been indeed made, that fact may be brought forward by supplemental bill, as, indeed, may any material matter that has arisen since the entering of the decree, or any other ma-

Brown *v.* Brown.

terial matter which will show that the defendants are concluded by the decree, if such matter in fact exist.

If such notice has been given it will, in connection with the decree, operate as an effectual estoppel upon the defendants. The question whether such notice has been given or not, must, or may be, in any case a matter of controversy, which may depend upon mixed questions of law and fact, to be decided upon proper issues.

What we have settled on this point, and what we still adhere to, is that when the petition is filed, as in this case, under the statute, and there is no entry upon the record, or other record evidence in the cause, showing that service of the decree has been made upon the defendant, and the petition, as in this case, negatives such service, and contains the other averments required by the statute, and is otherwise in proper form, it should be received by the Court, and if not fatally contradicted by the record the petitioner should be admitted to answer; and when this occurs the petition has served its purpose, and all controversies are transferred to the pending cause, including every question of notice of the decree, if there should be such in fact, and any and every material matter that has arisen since the decree was entered, and every other material matter that may be brought forward by proper pleading.

It is suggested in the petition to rehear that this is a dangerous holding. It is our duty not

to make law, but to interpret and declare. We have no concern with the policy or tendency of the statute. We declare its meaning and enforce its provisions. Nor are these provisions, as thus construed, out of harmony with the body of our jurisprudence. If one have a judgment *pro confesso* against a defendant served with process in chancery, he is no less concerned to maintain his decree than the complainants in this cause; yet it is the every-day practice, when seasonable application is made, to set aside such decrees upon *ex parte* affidavits, of which no denial is allowed. *Buchanan* v. *McManus*, 3 Hum., 450. The same rule obtains in *certiorari* cases. *Studdart* v. *Fowlkes*, 2 Swan, 538; *Edde* v. *Cowan*, 1 Sneed, 294; *Nicks* v. *Johnson*, 3 Sneed, 327; *Nance* v. *Hicks*, 1 Head, 625; *Ezell* v. *Holloway*, 2 Bax., 18.

And the practice of setting aside judgments by default in courts of law, upon petition or affidavit, is very common, and it does not appear that any answer has ever been allowed to such petition, or any countervailing evidence heard in any form. *Bank* v. *Skillern*, 2 Sneed, 698, 699; *Jones* v. *Cloud*, 2 Cold., 236; *Railroad Co.* v. *Dowd*, 9 Heis., 179; *Tucker* v. *James*, 12 Heis., 333–337.

The principle underlying all these particular instances is, that, in obedience to the spirit of our free institutions, no man's property, estate, or rights shall be taken from him except by due process of law; and after a fair opportunity has been afforded him to be heard, of which opportunity he cannot

Brown *v.* Brown.

be deprived save by his own fault or negligence, or by the efflux of such a period of time—fixed by statute or prescription—as shall at once conserve the general welfare, and afford a fair presumption that the needful day in court has been within the power of the individual concerned. Hence, where merits clearly appear, the Court will not be too exacting in the consideration of technical objections that lie between the litigant and a fair trial. *Burgoine* v. *Taylor*, 25 Eng. Rep., 710, *per* Jessel, M. R.; *Haggerty* v. *Walker*, 33 N. W. Rep., 244.

But it is argued that complainants should have the right to answer the petition, because it prays for process, and that process was issued and served upon them. It is true that such process was issued and served, and that when the petition was dismissed, the Chancellor likewise caused an order to be entered quashing the process. In these facts, however, we find no ground for altering the views already announced. The petition was filed as a petition purely, under the sections of the Code in question; not, certainly as to these non-residents, to tender any matter of litigation, but simply to secure the right to make defense to a bill already filed. If the petitioner erroneously prayed for the issuance of copy and a subpœna to answer in regular form, as in case of bills in chancery, when in fact such practice was not proper, that could not change the legal rule, and give the right to answer when none before existed.

The complainants adopted the correct practice when they moved to dismiss the petition, and considered it on its face alone in connection with the record; and the process, as technically such, was well quashed by the Chancellor. While the statute contains no provision authorizing notice to issue in any form, it may well be granted that some kind of notice should be given the complainants to apprise them of the filing of the petition, in view of the fact that the petition may be offered years after the cause is retired from the docket, when the complainant and his counsel cannot be technically presumed to be in court attending to the litigation as in pending causes.

This precise difficulty was presented to the Court several years ago in *certiorari* cases; and although the Article of the Code regulating the practice in that class of cases made no provision for the issuance of notice to the creditor, except in the event of a *supersedeas*, which the section (New Code, Section 3848,) provides shall be directed to the opposite party, or the officer in whose hands the execution may be, still the Court held, and, we think, very properly, that the opposite party was entitled to notice of the filing and pending of the petition, and, reasoning from the general rule for the service of process, declared that the notice must be served at least five days before the term at which the petition was to be acted on, and that unless such notice had been given the opposite party would not be in default in failing to

make the motion to dismiss at the first term. *McDowell* v. *Kellar*, 1 Heis., 452; *Gardner* v. *Barger*, 4. Heis., 672, 673; *Hardin* v. *Williams*, 5 Heis., 388, 389. And the notice is all that is necessary to bring the opposing party into court. *Mann* v. *Roberts*, 11 Lea, 66.

This practice of issuing a simple notice in pending causes, or in those not wholly and finally determined, is of very frequent occurrence in our Code, when the purpose is simply to · apprise the opposite party that something is transpiring, or proposed, or done, that may affect his rights, and it is desired that he . have opportunity to be present to protect these rights; as, where the Chancellor is asked in vacation to hear motions and make interlocutory orders and decrees to prepare causes for final hearing and determination (New Code, §§ 5153, 5155); or to dissolve an injunction (*Ib.*, § 5194); or to appoint a receiver (*Ib.*, § 5201); or when a party is under attachment for contempt for the non-performance of a decree, and a *habeas corpus* is sued out in the same court for his discharge (*Ib.*, 5231–5233); so, where a party makes a motion to correct a judgment in the Circuit, Chancery, or Supreme Courts, or before a Justice of the Peace (*Ib.*, §§ 3508–3591); or where an administrator is to settle his accounts (*Ib.*, § 4845, sub-sec., 15); or petitions to resign (*Ib.*, § 3078); and in summary proceedings generally (*Ib.*, §§ 4330, 4331, 4360); and in this manner arbitrators are re-

quired to apprise the parties of the time and place of final hearing (*Ib.*, § 4179).

We are of opinion that the proper practice in such cases as the one now under consideration requires only a notice similar to that so well settled in *certiorari* cases, and that such notice should always be issued and served before the petition is acted upon by the Court; but the process served in this cause seems, for this particular litigation, to have answered all the purposes of notice in proper form to apprise. the parties of the matter in hand, and to bring them into court, and so much of it as required the complainants to answer the petition was merely surplusage.

But complaint is made in the petition to rehear, that we have settled the whole controversy in passing on the validity of the petition to reopen the cause. It may be true that the principles declared in the former opinion do practically settle the contest against the complainants, but in form the decree ordered by the opinion simply adjudges that the petition is good, and remands the cause to the Chancery Court, to the end that petitioners may make defense to the complainants original bill.

In determining the sufficiency of the petition it became necessary to try the question, whether it showed merits, and to settle this question it became compulsory upon us to construe the will of John Brown, deceased. To this labor we were invited by counsel upon both sides, with a zeal

and ability worthy of any cause; and if we should now undo all we have done, and permit the questions already settled to be again debated, we know not what word could be added to arguments already so full, so thoughtful, so provident of every contingency that ingenuity could suggest, and so panoplied at all points with the armor of attack and defense.

The result which complainants seem to have reached is not infrequent in litigation. It often happens that an entire controversy is in effect settled by the judgment of the Court upon a demurrer, or a motion to dismiss, wherein the principles governing the controversy being settled, and there being no dispute about the facts, subsequent litigation, while not impossible in form, becomes impracticable in substance.

It is respectfully suggested that, in another branch of the inquiry, we disregarded the authority of *McCaleb* v. *Crichfield,* 5 Heis., 288–292. The opinion delivered in this cause, at a former day of the term, contains, on the point indicated by the objection now under consideration, the following language: "The fourth ground presents the point that the original bill was a suit against a class of persons having a common right of defense, and that a decree against the representatives of the class before the Court would be binding on the whole class, and hence that the case would not fall under the sections of the Code cited. Not deciding the point that such a case would or would not, as

to the non-residents, fall under the statute, on inspection of the original bill we find that the persons made defendants thereto are not proceeded against as a class of persons. This is indispensable in order to invoke the operation of the chancery rule on that subject. 'Where it is attempted to proceed against two or three individuals, as representing a numerous class, it must be alleged that the suit is brought against them in that character.' *Lanchester* v. *Thompson*, 5 Madd. Ch. Rep., 15, 16. In the cause at bar, the defendants were proceeded against individually, under the license given in Sub-sections 1, 4, and 5 of Section 4352 of the Code, and no attempt whatever was made to fix upon any of them a representative character, either within the letter or spirit of the chancery rule." This is alleged to be in conflict with *McCaleb* v. *Crichfield*.

That case was as follows: Henry Crichfield died, leaving a will, by the fifth and sixth clauses of which he provided: "All the remainder of my estate, including land and personal property, shall be sold by my executors, and proceeds equally divided between all my grandchildren, and also William Ball, a son of a granddaughter." Sixth clause: "And if any of my grandchildren should die after my death, the share going to such grandchild shall be equally divided between his or her brothers and sisters, provided the deceased has not received his share before his death." Three of the grandchildren, and the assignee of another grand-

child, brought a bill for their respective shares under these clauses of the will. The bill was brought against the executors. It does not clearly appear whether any of the legatees were made defendants or not; it may be that some of them were, and not all, but we infer from the language of the first demurrer, hereinafter quoted, that, of the legatees, only the complainants were before the Court, and that the bill was filed against the executors only. The bill alleged that there were "thirty-five grandchildren at death of testator, in 1858, and that the legatees were so numerous at death of testator, and have since so changed by marriage, death, etc., and scattered by lapse of time, and disturbances through which the country has passed, that it is inconvenient, expensive, and in fact wholly impracticable to make them all parties by name." There was an original and amended bill. Both contained substantially the same allegation on this point. The demurrer to the original bill stated as its ground: "Because it appears by the bill that Henry Crichfield, Sr., left other heirs besides those named as complainants not made parties to the bill." The demurrer to the amended bill stated as its ground: "Want of parties in not making the other legatees parties." The two demurrers were heard together and overruled by the Chancellor, and his decree was affirmed by this Court. The opinion goes on this ground: Conceding the authority of the general rule, that all persons who have a legal or beneficial interest in

the subject-matter of the suit ought to be before the Court, either as complainants or defendants, still the rule is subject to the exception that where, in a suit for a legacy by a residuary legatee, it is impracticable to bring before the Court all persons who ought to be made parties—that is, the remaining residuary legatees—or where the inconvenience and expense would greatly over-balance the utility of the proceedings, the Court will dispense with the presence of such persons at the beginning of the suit, and will proceed to decree the shares of the parties before the Court, subject to the condition, however, that on a reference to the Master the complainants shall show the number of shares entitled, and the exact amount of their own shares; or, as stated in the language of the opinion: "As a matter of course, on a reference to the Clerk and Master, in order to the ascertainment of the interests of complainants, they must show the number of parties entitled; but we do not think the bill should be dismissed at this stage on demurrer for this cause, and the trustees be allowed to keep a fund in their possession, and defeat this proceeding because of the difficulty of ascertaing the names of parties so numerous, as in this case, at the commencement of the suit." (*Ib.*, p. 292.) To precisely the same effect is *Kittle* v. *Crary*, 1 Paige, 420, quoted from in this opinion (by misprint reported in the extract as *Ross v. Crary*), though the meaning of that excerpt is much marred by misprints, the chief of which is the words there ap-

pearing—"*or in reference to the matter,*" should read—
"on the reference before the Master." *Kittle* v.
*Crary* was a suit almost identical in character
with *McCaleb* v. *Crichfield,* both being suits by leg-
atees for legacies, and the defense made by the
executors that all the legatees were not before the
Court; and in strict accord is *Hallet* v. *Hallet,* 2
Paige, 18, 19, the other case refered to in the
opinion.

It is obvious that *McCaleb* v. *Crichfield* does not
present the case, nor was it intended to present
the case of one or a few members of a class stand-
ing for all others, in which, while the unnamed
members are not parties by particular designation,
yet they are in substance and legal effect parties
by substitution and representation of their legal
vicariate; but, on the contrary, it presents the case
of a dispensing with parties who would be neces-
sary to the cause at the outset but for the special
circumstances of exception set up in the plead-
ings. It was not contended by any one, nor was
it held by the Court, that any party to the record
represented or stood in the stead of any other
person whose rights were involved; nor does the
Court by any other means hold that the rights of
the parties so dispensed with could be in anywise
affected by such decree as might be rendered in
the cause upon the hearing, but, so far from this,
the bills were allowed to stand for the purpose of
decreeing the shares only of the parties before
the Court; and this, instead of antagonizing the

rights of absent persons, or of seeking to fix those rights without giving them the opportunity to be heard in their own behalf, is in express accord with those rights, and conceded their existence; while in the case at bar, on the contrary, the rights of the absent parties are not only not conceded, but expressly attacked. These complainants do not seek aliquot parts of a fund, the residue of which they concede belongs to the defendants, but they seek to recover all of the estate, and so far from its being possible to protect those defendants by any accounting before the Master, the frame of the bill, and the nature of complainants' contention, precludes all possibility of such a result.

Indeed, the only similarity between *McCaleb* v. *Crichfield,* and the case at bar, is that in both the other persons interested, or supposed to be interested in the estate, are described as unknown and numerous. But, while in *McCaleb* v. *Crichfield* the fact is brought forward in order to enable the complainants to dispense with their presence, in the case at bar the allegation is made to enable the complainants to make the unknown persons parties in their own right, under the provisions of Code, § 4352 (New Code, § 5095), and the prayer of the bill asks that they be made parties, and to that end that publication be made. The caption of the bill, after naming as defendants nineteen persons as children or grandchildren of Elizabeth Stewart, proceeds (still making parties), "and all the unknown children and grandchildren or heirs

of Elizabeth Stewart, they being too numerous to mention, and unknown to complainant, and all non-residents of Tennessee—defendants." The pertinency of this caption and prayer will more fully appear by reference to the language of the section just referred to, and some of the succeeding sections in the same article: Section 4352, "Personal service of process on the defendant in the Court of Chancery, is dispensed with in the following cases:" (1) "When the defendant is a non-resident of the State." * * * (4) "When the name of the defendant is unknown, and cannot be ascertained upon diligent inquiry." (5) "When the residence of the defendant is unknown, and cannot be ascertained upon diligent inquiry." Section 4353 provides for an affidavit. Section 4354: "In such cases, if the defendant does not cause his appearance to be entered, the Clerk, as soon as the necessary affidavit is made, shall enter upon the rule docket an order requiring the defendant to appear at a certain day therein named, being a rule day, and defend, or otherwise the bill will be taken for confessed." * * * Section 4358: "When the suit is against an unknown defendant, the order of publication should describe such unknown party, as near as may be, by the character in which he is sued, and by reference to his title or interest in the subject-matter of the litigation;" and on failure to appear after due publication of such an order, by Code, Section 4369, Sub-section 2, provision is made for taking the bill for confessed in

such cases, along with the other cases falling under Code, §§ 4352, 4358.

We think it very clear that the bill sought to make all of the children and grandchildren of Elizabeth Stewart defendants, each in his own right, and that no defendant was sued in a representative capacity; and we know of no authority that impeaches the rule laid down .in the former opinion, that where it is attempted to proceed against two or three individuals as representing a numerous class, it must be alleged that the suit is brought against them in that character. Certain it is that *McCaleb* v. *Critchfield* is not such an authority. Moreover, the rule is founded in inherent justice, and could stand by its own strength, even if it were unsupported by the eminent authority which has been adduced in its behalf. It is without doubt highly important that the Court, by proper pleadings, should be apprised of the fact that the party named as defendant does not appear in the record in his own right merely, but, by construction of law, representing in his own person the rights and interests of others. Being so informed, the Court has imposed upon it a duty, especially in the supervision of agreements and compositions during the trial, as well as other points looking to a fair presentation of the case, similar to the duties imposed where the rights of infants are involved. And for a stronger reason must this be true, when the fact is considered that it is always in the power of one about to file such a bill to select

such representatives as he may desire. And if bills may be so filed, ostensibly against one or a few persons only, without notice being brought to the Court that they are sued as representatives of a class, and afterwards the complainant be allowed to claim that the whole class is bound, the most disastrous consequences might well happen to the estates of innocent persons, which the Courts would be equally powerless to prevent or redress.

It is insisted that it appears in the petition that other parties have acquired rights under the decree, and that these rights are protected under the provisions of Code, § 4383 (New Code, § 5126). That section reads as follows: "The decree, if executed before it is set aside under any of the foregoing provisions, will be a protection to all persons acting upon its validity, and will confer a good title to all property sold under it." The page of the petition referred to contains a recital, setting forth the fact that John P. Brown had executed a mortgage upon certain portions of the property in May, 1880, to secure a loan.

This person, the mortgagee, is not before the Court, and in a matter so nearly affecting his rights, the Court will express no opinion in his absence. It is sufficient to say, that whatever may be his rights or claims, they cannot be allowed to interfere with the rights of the parties before the Court, as between themselves.

It is also urged that as Sections 4379 to 4383 have been declared inapplicable to divorce proceed-

ings (*Owen* v. *Sims*, 3 Cold., 544, 551), they ought not to apply to contests of the character now under consideration; and that this should also be true for the additional reason that in contests over wills at law, when the will is presented for probate in solemn form, that proceeding is treated as of the nature of a proceeding *in rem*, and that the judgment is binding on all parties in interest, whether parties to the issue or not (*Hodges* v. *Bauchman*, 8 Yer., 186; *Patton* v. *Allison*, 7 Hum., 320; *Fry* v. *Taylor*, 1 Head, 595; *Williams* v. *Saunders*, 5 Cold., 72), and that the case at bar is likewise in the nature of a proceeding *in rem*, closely analogous to the contest of a will, and that the same rules should apply to both litigations. Complaint is made in the petition to rehear, that this position was altogether overlooked when the former opinion was delivered.

We need not discuss the reasons which controlled the decision of the Court in the case of *Owen* v. *Sims, supra*. By an examination of that case it will be seen that the action of the Court was based, partly on the fact that the petition to open the decree was not presented until after the death of the complainant, and, being a divorce suit, the subject-matter of the litigation was then sunk in the grave of the husband, and that to open such a case would be an anomaly and an absurdity; and partly on the peculiar nature of divorce proceedings, the repose of society, the danger that one or the other of the divorced parties might

Brown *v.* Brown.

have married in the meantime, and on the general ground of public policy. It is perfectly evident that this case affords no authority to sustain the present complainants' contention.

Nor can any firmer support be found in the principles that govern the results of causes tried under the issue of *devisavit vel non.* If our time would permit us to go far into an inquiry so purely collateral to the present controversy, as to set forth the general nature of proceedings *in rem,* and compare them at large with the principles governing the class of controversies involved in the present litigation, and to note their correspondencies and differences, we much doubt the utility of such an intellectual excursion, and indeed fear that it would be altogether out of place. It may be sufficient to say that in proceedings *in rem,* all persons in interest are parties—or, as it is sometimes said, the whole world are parties, and any person having an interest in the property may interpose a claim and prosecute an appeal from the sentence or decree; and it is said that notice is served upon the thing itself, and that thereby all persons interested are presumed to have notice, because it is the part of common prudence for all persons who have an interest in the property to guard that interest by persons who are in a situation to protect it. *Croudson* v. *Leonard,* 4 Cranch, 437; 9 Cranch, 144.

It is said that "the judgment of a Probate Court, allowing proof of a will and admitting it

to probate, is in the nature of a proceeding *in rem;* that is, an adjudication pronounced (as its name imports) upon the status of a particular subject-matter, by a tribunal having competent authority for that purpose, and therefore binding and conclusive upon the rights of all persons interested in the property to be administered, though they are not named as parties. Redfield on Wills, Part II., pp. 55, 56." *Williams* v. *Saunders,* 5 Cold., 72.

In *Tompkins* v. *Tompkins,* 1 Story Rep., 547, it is said, "the reason is, that it being the sentence or decree of a Court of competent jurisdiction, directly upon the very subject-matter in controversy, to which all persons who have any interest, are, or may make themselves parties, for the purpose of contesting the validity of the will, it necessarily follows that it is conclusive between those parties. For otherwise there might be conflicting sentences or adjudication upon the same subject-matter, between the same parties, and thus the subject-matter be delivered over to interminable doubts, and the general rules of law as to the effect of *res adjudicata* be completely overthrown. In short, such sentences are of like nature as sentences in proceedings *in rem,* necessarily conclusive upon the matter in controversy for the common safety and repose of mankind." 5 Cold., 77.

In *Hodges* v. *Bauchman,* 8 Yer., 187, it is said: "The probate of a will or the granting of letters of administration, is a proceeding in the nature of a proceeding *in rem,* operating on the subject-mat-

ter, and binding generally; the probate is evidence of title, without reference to parties, who do not and cannot regularly exist in such cases." * * * "All who are interested may become parties in conducting the litigation in case of a contested will, and, if they do not, it is indispensable to the repose of society that they be concluded." * * * "The Act of 1789, Chapter 23, providing for the probate of wills, and the mode of contesting their validity, does not speak of parties plaintiffs and defendants; no such idea was in the minds of the Legislature. It was made the duty of the Court of Probate to ascertain whether the will had been duly executed, without reference to the individuals interested in the result of admitting the will to record. The Court was bound to act upon the subject-matter, and to settle the title to the property, late of the testator, left without an owner. The interests of society admitted of no delay. If any one or more interested in the result objected to the validity of the will, then the Court was ordered by the statute to make up an issue, will or no will, and try the fact before a jury, * * * and according to the finding of the issue by the jury, record the will or reject the paper presented as such. But this was a proceeding for the ends of justice of a public nature, and conclusive on the world."

If, in the last analysis, when on the one hand we compare probate cases with other litigations over the succession to personal and real property,

and attempt to draw a clear distinction, and if,
on the other hand, when we contrast those cases
with proceedings purely *in rem*, we find the term
subject - matter somewhat elusive, and difficult to
reduce into logical harmony with the very material
*res* involved in pure proceedings *in rem*, as a ship,
or a hundred sacks of coffee; it must be remem-
bered that the necessity arising from conflicts of
jurisdiction over the succession to deceased persons'
estates in different countries, which have often
been of the most perplexing and distressing char-
acter, induced an appropriation of the principles
governing proceedings *in rem*, rather than any
perception of an absolute oneness of essence in
the two classes of questions, and that they indeed
both spring out of a common necessity, and grow
from the same root, the need in general to pre-
vent conflicts over questions that, in their nature,
cannot be confined to any one jurisdiction or to any
one system of jurisprudence. But it would not
be profitable to pursue this discussion further.
Enough has been said to show that there is really
no such common ground between probate cases
and the case at bar as to require the extension to
this case of the principles governing those. The
analogy between the two classes of cases is acci-
dental, not vital. Indeed, the Court may as well
be asked to extend those principles to every con-
test over the title or succession to property, even
when the contest is over the construction of a
deed, or the terms of a verbal contract.

It is averred in the petition to rehear that the Referees reported that only defendants to the original cause could come by petition, unless they were parties as a class, and if, as a class, they were bound; that no one excepted to this portion of the report, and hence that this ruling must now control, so far as may be, and that as Edward Stewart, Elvira Stewart, E. H. Greer and wife, Annie E. Greer, Parker Morris and wife, Mary L. Morris, and Peter Loveline were not named in the original suit, and are named in the petition, the petition should be dismissed as to them; and that as Catherine Loveline and others were parties to the original bill, but not parties to the petition, the decree must stand as to such persons.

The petition to rehear does not state the report correctly. True, some such language in effect was used in the report, *arguendo,* but afterwards, speaking to the same point, the conclusion reached by the report is that all of the children and grandchildren of Elizabeth Stewart—as well those designated as those proceeded against as "unknown"— were by virtue of the provisions of the statute in that behalf, and the action of the complainants thereunder, made defendants to the bill, and as such, were concluded by the decree, and hence entitled to present the petition for reopening the cause. We concur in that result.

This disposes of the statements in the petition touching all the persons above named, except Cath-

erine E. Loveline. They were not named in complainants' bill, but fell within the description of the unknown non-resident defendants, children and grandchildren.

E. H. Greer, Parker Morris, and Peter Loveline appear as petitioners by reason of their marital relations.

It is impossible to say from the record whether the person made defendant to the bill under the name of Catherine E. Loveline is the same person who appears in the petition as Catherine E. Loebline; if they are different persons, then Catherine E. Loveline has not petitioned to open the decree, and must therefore be bound by it; if the two names represent one and the same person, and the name was wrongly stated in the bill, then she became a defendant under that clause of the bill which made the unknown children and grandchildren of Elizabeth Stewart defendants, and prayer for publication against them as such; and in any event the question is immaterial, because the decree to open is in favor of the petitioners only, exclusive of H. A. Brown.

These various questions were not overlooked on the first consideration of the cause; all of them were thoroughly weighed at the time, but not being deemed of commanding importance in the controversy, save one, they were not dwelt upon at length, and some were omitted altogether in the discussions of the opinion then delivered, to the end that the opinion might not be too much ex-

Brown *v.* Brown.

tended, or encumbered with matter, which, while indeed eminently proper in itself, was not strictly necessary to a decision. But in deference to the very earnest and respectful petition to rehear, and in view of the large interests involved, and the important consequences the decision must bring to bear upon the rights of the parties concerned, we have again gone carefully over all the ground pointed out in the petition, and have set out our reasons in order.

Let the petition to rehear be overruled with costs.