### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

## WESTERN DIVISION

---

## JACKSON, SPECIAL TERM, NOVEMBER, 1914.

---

MURRELL *et al. v.* RICH *et al.*

(*Jackson.* Special Term, November, 1914.)

1. **WILLS. Probate. Contests. Jurisdiction of circuit court.**

Under Shannon's Code, sec. 3905, providing that, where the validity of any will is contested, the county court shall cause the fact to be certified to the circuit court, and send to such court the original will, and require the contestant to enter into bond for the prosecution of the suit, and for the payment of costs in case of failure, where a will containing a revocatory clause was propounded for probate, and by an answer to the citation filed by the executor named in the will, who was also named as executor in an earlier will, it was alleged that such earlier will had been admitted to probate ,and that the parties interested thereunder would deny the validity of the writing propounded, and the earlier will and the paper propounded showed that the two wills could not coexist, the circuit court had jurisdiction, though the

131 Tenn.]        (378)

Murrell v. Rich.

probate court erroneously rendered a judgment denying probate, from which an appeal was taken to the circuit court, instead of certifying the case to the circuit court and requiring a bond, as the validity of the will was, in fact, contested, and such contest gave jurisdiction to the circuit court, and it could not be deprived of such jurisdiction by the failure of the probate court to comply with the statute. (*Post, pp.* 396-400.)

Cases cited and approved: Patton v. Allison, 26 Tenn., 320; Ford v. Ford, 26 Tenn., 95; Cornwell v. Cornwell, 30 Tenn., 485; Linch v. Linch, 69 Tenn., 527.

Cases cited and distinguished: Swift & Co. v. Warehouse Co., 128 Tenn., 100; Wisener & Brown v. Maupin, 61 Tenn., 352.

Code cited and construed: Sec. 3905 (S.).

2. **WILLS. Probate. Contests. Jurisdiction of circuit court.**

The circuit court did not lack jurisdiction of a contested proceeding to probate a will on the ground that such proceeding was a collateral attack on the judgment of the probate court admitting an earlier will to probate, as the proceeding to establish the later will was a direct proceeding, and in no way collaterally assailed the vaidity of the proceeding to probate the earlier will, or the judgment probating it, and, while the probate of the later will would nullify the earlier will, this did not result from any collateral attack on the judgment of the probate court, but from the law which gives effect to the last testamentary act of the testatrix. (*Post, pp.* 400-405.)

Cases cited and approved: Johnson v. Gaines, 41 Tenn., 288; Townsend v. Townsend, 44 Tenn., 70; Brien's Adm'r v. Hart, 25 Tenn., 131; Posey v. Eaton, 77 Tenn., 504; Gaines v. Hennen, 65 U. S., 553.

Cases cited and distinguished: Gaines v. City of New Orleans, 73 U. S., 704; Bowen v. Johnson, 5 R. I., 112; Waters v. Stickney, 12 Mass., 1; Schultz v. Schultz, 10 Va., 358; In re Mears' Estate.

3. **WILLS. Contests. Reopening case for further evidence. Discretion of court.**

In a proceeding to establish a will from which, as presented to the court, several pages were missing, after the evidence had been

introduced and the arguments to the jury had been commenced, it was within the sound judicial discretion of the trial judge whether the case should be reopened for the ·introduction of further evidence, and such discretion was not abused by refusing to reopen the case, to allow the contestants to recall an adverse party and examine him with reference to a conversation in which he stated that the testatrix made the will, but that afterwards she got out with some of the parties and destroyed it, or made away with it, and that she died without a will; this being. but his opinion, though in form stated as a fact, and no sufficient legal excuse being shown for the failure to offer the evidence at the proper time.    (*Post, pp.* 405-407.)

4. **EVIDENCE. Opinions of witnesses. Admissibility.** In a proceeding to establish a will, an agreement that an earlier will was the last valid will of the testatrix, signed by a number of parties, including the person named as executor in both wills, by his attorney, and claimed to have been subsequently ratified by the executor, was properly excluded, as it would have shed no light upon the issue, but would merely have shown that the executor and his attorney at one time believed the earlier will was the last will of the testatrix, and this was merely a matter of opinion and incompetent as evidence.    (*Post, pp.* 407-409.)

5. **WILLS. Contests. Instructions. Mutilation of will. "Presumption."** In a proceeding to probate a will from which, as presented to the court, several pages were missing, the court charged (that, if the will was in the possession and custody of the maker, and at he time of her death it was found that it was mutilated, in the absence of any explanation, the law presumed that she intended thereby to revoke the will); that contestants claimed that, as there were four pages missing, this constituted a mutilation in law, and the presumption arose that the testatrix revoked the will; that this presumption could obtain only in case the jury found that the will was in the possession of the testatrix, and that it was found after her death among her papers; (that a "presumption" was an inference that the law drew from certain proven facts, so that, if the will was in the custody of

Murrell v. Rich.

the testatrix and in her possession, and "immediately" after her death was found in a mutilated condition unexplained, the law presumed that she revoked it); that proponents claimed that before such presumption was well founded there must be evidence that the will was in her possession and custody, and that their theory was that prior to, or about the time of, her death her house and papers were ransacked, and the missing parts purposely, carelessly, or accidentally lost or removed; that the presumption referred to was a rebuttable presumption, and, if the facts and circumstances in evidence were such as to warrant the belief that the testatrix did not remove the missing part or authorize its removal, but that some other person did, that would overturn the presumption, but that the presumption would not be overthrown by merely showing that somebody had an opportunity to get the will, or had access to it, and that they must prove facts reasonably justifying a finding that some person did purposely or intentionally remove the paper. *Held*, that the parts of the instruction in parentheses were not erroneous, when considered in connection with the other portions, as telling the jury that the presumption of revocation would only arise when unexplained upon finding a mutilated will in the possession of testatrix, nor was it erroneous because of the use of the word "immediately." (*Post, pp.* 409-411.)

6. **APPEAL AND ERROR. Assignments of error. Certiorari to court of civil appeals.**

Under Acts 1907, ch. 82, creating the court of civil appeals and regulating the method of reviewing its judgments or decrees, and supreme court rule 12 (126 Tenn. [18 Cates], 720, 160 S. W., viii), providing that petitions for *certiorari* to remove cases from the court of civil appeals shall be accomplished by an assignment of errors predicated upon the judgment or decree of the court of civil appeals, and a brief in support thereof in the form required by rules 14, 15, (126 Tenn. [18 Cates], 721, 724, 160 S. W., ix, x), applicable to cases brought directly from trial courts to the supreme court, and that the assignments of error, briefs, and arguments filed in the court of civil appeals cannot be refiled in the supreme court, as the case is brought before the supreme

court for error in the action of the court of civil appeals, and not of the trial court, an assignment of error that the court of civil apeals committed prejudicial error in pretermitting assignments of error therein specified, and not determining them at all, was insufficient, and was not cured by setting out in the discussion of the pretermitted assignments of error special requests as to which the parties assigning error complained because the circuit judge did not embody them in his charge, and as to which they asserted the court of civil appeals was in error, because it pretermitted such assignments of error. (*Post, pp.* 412-414.).

Acts cited and construed: Acts 1907, ch. 82.

Case cited and approved: Mayor and Aldermen of Nashville v. Patton, 125 Tenn., 361.

---

FROM SHELBY.

---

Appeal from the Circuit Court of Shelby County to the Court of Civil Appeals, and by *Certiorari* from the Court of Civil Appeals to the Supreme Court.— ————, Judge.

T. K. Riddick, Lehman, Gates & Martin, and P. W. Evans, for contestants.

G. T. Fitzhugh, Sweeney & Sweeney, and C. M. Bryan, for proponents.

Mr. Justice Buchanan delivered the opinion of the Court.

The magnitude of the estate involved in this cause, and the importance of the questions made, demand some elaboration in a statement of its facts.

This suit originated by the filing of a petition in the probate court of Shelby county, on October 31, 1912, by Mrs. H. Rich and others. Petitioners averred the execution by Mrs. Caroline Cloth of an holographic last will and testament on the 1st day of August, 1900, witnessed by three competent subscribing witnesses, viz., J. H. Lenow, H. A. Hunter, and John Bright, and the devise to petitioners by said will of certain real estate and other property located in the city of Memphis, described in the petition, and the devise by said will of certain real and personal property to Miles S. Buckingham, to the extent of about one-half of the estate of the testatrix, and that he was appointed executor and trustee by the terms of the will to execute its provisions; that the death of the testatrix occurred on or about the 9th day of June, 1912, at her usual place of residence in the city of Memphis, county of Shelby, and State of Tennessee, leaving said will as her last will and testament; that said Miles S. Buckingham, executor, had failed and refused to produce the will and offer the same for probate; that it was in his possession or under his control, or in the joint possession and control of Buckingham and of Hon. William H. Carroll, and that the will could be produced by them for probate; that the will made provision for divers other legatees and devisees, of whose names petitioners were not then certainly informed; that petitioners were advised and believed that they, as devisees under said will, were entitled to have the same probated. The prayer of

the petition was that subpœna issue to Miles S. Buckingham, the executor, and to William H. Carroll, with copy of the petition, if necessary, commanding them to bring into the probate court the will on a day to be fixed by the court, and that subpœna issue for the attesting witnesses to appear on said day to authenticate the will, to the end that the same be probated by the court as the last will and testament of Mrs. Caroline Cloth, deceased. The petition was duly verified by the oath of one of the solicitors for the petitioners, the date of this verification being October 29, 1912.

On the same day the petition was filed, and in response thereto, an order was made by the probate judge directing the clerk to issue subpœna and copy as prayed for in the petition summoning Messrs. Buckingham and Carroll to appear in court at 10 o'clock a. m., November 1, 1912, and directing them to bring with them the paper averred by the petition to be in their possession, and also directing subpœna to issue to each of the attesting witnesses to appear before the court on the day above stated to testify as such witnesses concerning the execution of the will. With their petition the petitioners filed a cost bond with proper surety.

On November 1, 1912, Miles S. Buckingham, as executor, and in his individual capacity, filed his answer in response to the above subpœna. By this answer it was disclosed to the court that, prior to the discovery of the paper propounded for probate by the petition, it had been reported to the executor that

Murrell v. Rich.

a last and valid will of the testatrix had been found in Clarendon, Ark., and that the Clarendon will had been duly probated in the probate court of Shelby county, Tenn., and, under it, that Buckingham had duly qualified as executor and was acting as such; that he did not know whether the paper writing propounded by petitioners was the last will and testament or not; that he was unwilling to undertake to determine that question, but was willing to accept the executorship of it if it was duly probated as the last will and testament of Caroline Cloth; that his attitude had been that of discharging his duty as executor; that he had done nothing to prevent the probate of a will of later date than the Clarendon will; that he would accept all offices, trusts, and bequests conferred upon him by the paper propounded by petitioners, if the same should be duly probated as the last will and testament of Caroline Cloth, deceased. Following the foregoing disclosures in the answer of Mr. Buckingham, this quotation from his answer appears:

"Respondent states that parties interested in the probated will deny the validity of the paper writing of 1900, and say that it is not the last will and testament of Caroline Cloth, deceased, and respondent submits himself to such orders and directions as this honorable court may give and in the premises, and will abide thereby."

It was also disclosed by the answer of Mr. Buckingham that the paper writing sought to be propounded

by the petition was not in the possession of Mr. Buckingham at the time of making his answer, but that the same after it had been found had passed into the possession of Hon. William H. Carroll, and by him had been deposited with the Union & Planters' Bank & Trust Company, where it remained, so far as the resposdent had any knowledge to the contrary.

On the same day the answer of Buckingham was filed, the Hon. William H. Carroll filed his answer to the petition, from which it was made to appear to the court that the paper writing sought to be propounded by the petition had been deposited in a safety deposit box in the bank aforesaid. Just when or how the paper sought to be propounded by the petition was finally presented to the probate court does not clearly appear from the transcript, but it does clearly appear that at some stage of this proceeding, and before the final judgment of the probate court was rendered in the matter, the paper writing was produced, and was before the court when its final judgment was rendered.

On the 8th day of November, 1912, Mrs. Mary Murrell filed an intervening petition in said proceeding averring the execution by Mrs. Caroline Cloth of the same last will and testament sought to be propounded by the original petition, and that by the twenty-first item of that will a devise was made in favor of Mrs. Mary Murrell of certain real estate located in the city of Memphis, and in the petition described. It was also averred that on or about the 13th day of August

of the year 1912 the probate court of Shelby county had admitted to probate the Clarendon will, and that the estate of the testatrix, Mrs. Caroline Cloth, was, at the date of the filing of the intervening petition, being administered under the Clarendon will by the executor therein named, Miles S. Buckingham, duly qualified as such executor thereunder. It denounced the Clarendon will as a frame-up and a forgery, and proceeded thereafter to set out reasons on which the foregoing charges against the Clarendon will were based. It then set out the first paragraph of the will sought to be propounded by the petition originally filed in the proceeding by Mrs. H. Rich, *et al.,* in which clause the testatrix revoked and made null and void all other wills by her at any time made. The petition then averred that the Clarendon will had been revoked by the clause above referred to. It appears by the averments of this petition that, prior to its filing, the holographic will of date August 1, 1900, and sought to be propounded by the petition of Mrs. H. Rich, *et al.,* had been presented and filed in the probate court of Shelby county. The petition then averred the necessity under the facts which it disclosed of the appointment of an administrator *pendente lite* to take charge of the personal estate of Mrs. Caroline Cloth, deceased. In conclusion, Mrs. Murrell's petition prayed the probate court to make an order recalling the probate of the Clarendon will and revoking the letters testamentary granted thereunder, and appointing an administrator *pendente lite,* and

that the court "grant to her all such relief suitable and proper in the premises until such time as her rights may be declared and established as devisee under the will of the late Mrs. Caroline Cloth, and a copy of this petition be served upon Miles S. Buckingham, executor, that he may make such defense thereto as he sees proper." The petition of Mrs. Murrell was accompanied by a cost bond with surety in proper form.

The certificate of the clerk of the probate court of Shelby county, which is attached to the supplemental transcript wherein the foregoing proceedings appear, after certifying the correctness of the copy of the proceedings above referred to, shows the following:

"I further certify that the caveat of Mary Beattie, *et al.,* was filed on November 8, 1912, but cannot be found in the record, as the same appears of record and now on file in my office."

The next step in this proceeding in the probate court, as disclosed by the transcript before us, is the judgment of that court. This judgment recites that the cause came on to be heard on the 9th day of November, 1912, and that Mrs. H. Rich caused to be produced in open court the paper writing purporting to be the last will of Caroline Cloth, lately deceased, bearing date the 1st day of August, 1900, having the name of Caroline Cloth signed thereto, and being subscribed by H. J. Lenow, H. A. Hunter, and John Bright as attesting witnesses, asd naming Miles S. Buckingham as executor, but, as the decree recites,

Murrell v. Rich.

Miles S. Buckingham being in open court and having failed to offer said will for probate, the petitioners, Mrs. H. Rich, *et al.,* moved the court that the same be admitted to probate and recorded as the last will and testament of the said Caroline Cloth, deceased. The decree then proceeds as follows:

"And, it appearing to the court from the testimony of H. J. Lenow and H. A. Hunter, two of said subscribing witnesses, that said paper writing was written in the lifetime of the said Caroline Cloth in her own handwriting and signed by her and subscribed in the presence of the said three witnesses, and subscribed by the said three witnesses in the presence of the said Caroline Cloth as attesting witnesses at her request, and that the same was executed on the day it bears date, and that the said Caroline Cloth was at the time of sound mind and disposing memory, and that the said Caroline Cloth lately died at her usual place of residence in the city of Memphis, Shelby county, Tenn.; but it further appears to the court from the testimony of said witnesses, and from an examination of said instrument, that four pages of said will, to wit, pages 5 to 9, inclusive, are missing from said instrument: It is therefore adjudged by the court that said instrument is not the true, whole, and last will and testament of the said Caroline Cloth, deceased. The motion of proponents to probate said instrument as the true, whole, and last will and testament of Caroline Cloth, deceased, is overruled and disallowed. To which ruling of the court proponents

excepted, and prayed an appeal to the next term of the circuit court of Shelby county, Tenn., which is granted upon proponents executing a bond with good and sufficient surety in the sum of $500, which has been accordingly done.''

The proponents, Mrs. H. Rich, *et al.,* thereupon executed and filed an appeal bond in the cause in the usual form and in the penalty of $500.

The transcript discloses no other proceedings in the probate court except those referred to above.

On November 20, 1912, Mrs. H. Rich, and those who had joined her in the original petition, filed their declaration in the circuit court of Shelby county, which avers:

''Plaintiffs produce in open court a writing purporting to be the last will and testament of Caroline Cloth, deceased, dated August 1, 1900, in which the plaintiffs are named as devisees, and plaintiffs aver that it is the last will and testament of the said Caroline Cloth, deceased, and offer to prove the same in solemn form.''

The declaraton then recites the clause of the will devising certain real estate located in Memphis to the plaintiffs, and the clause thereof appointing Miles S. Buckingham as executor and trustee of the will, and that the will was offered for probate in the probate court, and that there two objections were urged to its probate, to wit:

"The objection and caveat of Mary Murrell, and the objection and caveat of Mary Beattie, Grace Beattie, and Beulah Sevier."

And the declaration then avers the action taken by the probate court as already shown, and the appeal. The declaration then tenders the will as found after death of the testatrix with four missing pages for probate, and demands a jury to try the issues.

The filing of the above declaration by the original proponents of what is known as the "missing page will" was followed by a fusillade of pleading most unusual in character. In the view which we have taken of the case, these pleadings need not be referred to in detail. It is proper, however, to note here that the mutilated script which was propounded for probate in the probate court was not certified to the circuit court, nor sent to said court by the probate court as required by section 3905, Shannon Code (section 2173, Code 1857-58), in cases where the validity of any last will and testament is contested. But there is no controversy as to the fact that the mutilated script acted on by the probate court was the same which was propounded by the declaration. It is also noteworthy that, while the declaration recites the clause of the script appointing Miles S. Buckingham as executor and trustee of the alleged will, it does not make him a defendant, nor pray for process to bring him into court as such, and, while it names certain caveators as having objected to the probate of the script in the probate court, it does not make them

or any of them defendants, nor pray for process to bring them is as such. On November 26, 1912, Miles S. Buckingham, named as executor in the script, propounded, filed a petition in the cause, praying that he be allowed to intervene as a party. He denied in this petition that he had refused to offer the script for probate, and averred that he did not know whether it was the last will or not, but that, in the event it was held to be such, he was willing to accept the trusts it imposed as executor and trustee; that the paper had not been in his possession, and he had never been in a position to enable him to determine its validity. In the subsequent history of the proceedings in the cause, Mr. Buckingham was by order of the court admitted as a party proponent along with the Second Presbyterian Church and certain others who claimed as devisees, and who filed their petition setting up their interest in the estate under the missing page script; and thereafter the church and the parties so claiming as devisees filed their declaration in the cause, propounding the missing page or mutilated script, and averring that it and the four missing pages therefrom constituted the last will and testament of Caroline Cloth at the date of her death, and that the entire paper was among her valuable papers at the date of her death, and prayed for the issue *devisavit vel non* to be made up and tried by a jury. The circuit court, by order made on the 22d day of April, 1913, admitted all other parties named in that declaration along with Miles S. Buckingham as proponents

of the will, and directed that said declaration be thereafter considered and treated as the declaration of the proponents of the will and that all persons who desired to contest should plead to said declaration, and not to the declaration filed by the original proponents, Mrs. H. Rich, *et al.* To this order the latter proponents excepted, but thereafter, in the further proceedings in the cause, all parties proponent acquiesced in that order, and the contestants who came in voluntarily and defended the suit as such likewise acquiesced in that order by directing their sundry motions, demurrers, etc., and finally their pleas and answers to the merits of the declaration referred to in that order. The contestants who so came into the cause voluntarily, and without being brought in by process, were:

First, Mary L. Shaller. She came into the cause without leave had or asked before the declaration of the church and others was filed, and on November 23, 1912, Mrs. Shaller filed a plea to the declaration which had been filed by the original proponents, Mrs. H. Rich, et al. But later, on March 13, 1913, Mrs. Shaller, by leave of court, withdrew her plea, and demurred to the Rich declaration, but her demurrer was overruled. Her subsequent pleadings were filed after the order of April 22, 1913, and clearly her final plea and answer to the merits were in response to the declaration filed by the church and others.

The only other contestants appearing by name in the proceedings in the circuit court were Jacob Get-

to, *et al.,* who filed their motion in the cause on May 2, 1913, which motion was overruled May 3, 1913. These parties contestant were not made such by process, but came into the cause voluntarily. They filed another motion on May 16, 1913, which was overruled May 17, 1913. The two foregoing motions and the cost bond, the latter being filed on May 15, 1913, the Getto, *et al.,* contestants took the liberty of filing before they had ever asked to be admitted as parties to the cause. But on May 17, 1913, they filed a formal petition seeking to be admitted, setting out their residence and citizenship to be in the kingdom of Germany, and claiming as distributees of the estate in case of intestacy, and averring that they were advised that they would be bound and finally concluded by the judgment to be rendered on this issue, and that they had a right to become parties for the purpose of contesting the probate of the will and of making defense thereto. On the same day the order went down making them parties in response to their petition, and on the same day they filed their demurrer to the jurisdiction of the court, which was overruled. They then moved to dismiss the cause for alleged lack of jurisdiction, but this was overruled. They then pleaded to the merits of the declaration, and took formal issue on the averments thereof.

So, in substance, stood the parties and their pleadings when the case came on for hearing before his honor Judge Pittman and a jury in the circuit court. Questions were framed under direction of the court,

and submitted to the jury—questions of fact each relevant to the main issue *devisavit vel non*. The jury by their verdict answered each question in favor of proponents. The main issue was presented in a question framed as follows: "Is the said paper writing dated August 1, 1900, known as Exhibit A, including four missing pages, the last will and testament of Caroline Cloth, deceased?" This question the jury answered: "Yes."

Upon this verdict the judgment of the circuit court was rendered, and it was that the paper writing propounded, together with the four missing pages thereof, was the true and whole last will and testament of Caroline Cloth, deceased, and that the paper propounded was entitled to and was admitted to probate, etc. From this judgment the contestants appealed to the court of civil appeals, where they marshaled a large array of assignments of error against the judgment. Some of these were sustained by the majority opinion of that court, delivered by Mr. Justice Higgins. Mr. Justice Hall dissented. The result was a judgment reversing that of the circuit court, and remanding the cause for a new trial. The cause is before us on three petitions for *certiorari*, in one of which proponents assign errors complaining of the reversal, and in the other two of which Mary L. Shaller and Jacob Getto, *et al.*, respectively, complain because certain of their assignments of error were overruled and certain others were not ruled upon by the court of civil appeals. During our last term at Jack-

son we granted the writ on each petition, and full argument of the cause has been allowed.

Passing now to a consideration of the assignments of error, we observe at the threshold that they raise the question that the circuit court had no jurisdiction to try and determine the cause. This question, as already indicated, is made by those parties to the record who came into the cause voluntarily during the proceedings in the circuit court, under pleadings averring their interest in the estate in the event of intestacy.

"Jurisdiction has been well defined to be a power constitutionally conferred upon a judge or magistrate to take cognizance of and determine causes according to law and to carry his sentence into execution." *Swift & Co.* v. *Warehouse Co.,* 128 Tenn. (1 Thomp.), 100, 158 S. W., 485.

Beyond doubt, of course, under our statute, the circuit court, and that court alone, is invested with jurisdiction to try and determine an issue *devisavit vel non.* See section 2173, Code of 1857-58; section 3905, Shannon's Code. But the contestants say that this is not such an issue. To this insistence we cannot agree. It is clearly such an issue. They say it is not such an issue because the paper offered for probate in the probate court was not by that court certified and sent up to the circuit court as required by the statute (3905, Shannon's Code), where the validity of a will is contested, and because no contestant appeared in the probate court and there set on foot formal proceedings

Murrell v. Rich.

for contest, and because the probate judge did not require the execution of the bonds provided for by section 3905, Shannon's Code, and because the case was carried to the circuit court by appeal, which they insist could not be done, for the reason that the statute (3905) prescribes a particular method by which the will shall be sent up to the circuit court.

None of the matters above insisted on by contestants can be held to have defeated the jurisdiction of the circuit court. Prior to the enactment of the statutes codified in section 3905 of Shannon's Code, the county court in this State was vested with jurisdiction to admit to probate uncontested and contested wills alike, but the legislation embodied in section 3905, Shannon's Code, deprived the county court of jurisdiction to probate contested wills, leaving, however, in the county court, its former jurisdiction to probate uncontested wills. But all wills, whether contested or uncontested, must be presented for probate in the first instance in the county court, except in the county of Shelby, where the jurisdiction formerly belonging to the county court on the subject of the probate of wills was vested in the probate court of that county when it was created. When, therefore, a will is presented or propounded for probate under our system, that step must take place in the court of first instance, and the *status* of the will at the time it is presented and while there awaiting judgment determines the jurisdiction of the court of first instance, and limits its powers in respect of it. If it is an uncontested will, the court of

first instance may admit it to probate in either common
or solemn form, but, if it be a contested will, the only
power possessed by that court in respect of it is to
cause the fact that it is contested to be certified to the
circuit court, and to send the original will to that court,
and to take such action in respect of bonds, *et cetera,*
as our statutes authorize in such cases; but the failure
of the county or probate court to do any or all of the
acts above set out will not defeat the jurisdiction of
the circuit court over the contested will.

If a will is contested when presented to the probate
court, or if a contest arises after presentation and be-
fore judgment, the jurisdiction of the circuit court
*ipso facto* attaches over the subject-matter of the con-
test.

The view of our legislation above expressed has been
too long settled to admit of serious controversy at this
day. *Patton* v. *Allison,* 26 Tenn. (7 Humph.), 320;
*Wisener & Brown* v. *Maupin,* 61 Tenn. (2 Bax.), 352;
*Ford* v. *Ford,* 26 Tenn. (7 Humph.), 95; *Cornwell* v.
*Cornwell,* 30 Tenn. (11 Humph.), 485; *Linch* v. *Linch,*
69 Tenn. (1 Lea), 527.   In one of the cases above cited
the court, after quoting section 2137, Code 1857-58,
carried now as section 3905, Shannon's Code, said:

"It is obvious this section contains only directions
to the county court, which the county court is bound to
obey, and which, if neglected or refused by them, might
be enforced by the circuit court by virtue of its super-
visory power over inferior tibunals, either by *cer-
tiorari* for a complete record, or in a proper case by

*mandamus;* but how such failure on the part of the county court or its clerk could be a matter affecting and defeating the jurisdiction of the circuit court to make up and try an issue of *devisavit vel non* we are not able to see.'' *Wisener & Brown* v. *Maupin,* 61 Tenn. (2 Bax.), 347.

The statute (section 3905, Shannon's Code) does not prescribe the manner in which it shall be made to appear to the county court or probate court that the validity of a will is contested, but it is clear that the existence of that condition or state of facts in respect of a will offered for probate at the time offered, or thereafter and before judgment in such court on the matter, is that which fixes the status of the will.

It is manifest from what we have recited, taken from the transcript of this cause in the probate court, that the paper here involved was a contested will within the meaning of the statute. A will prior to it in date of execution made by the same testatrix had been admitted to probate in the probate court of Shelby county before the paper here involved was offered for probate in that court. The first paragraph of the paper here involved contained a revocatory clause of any and all other wills therefore made. Moreover, the two wills were inconsistent in terms; both could not stand. The attention of the court was expressly called to the probate of the former will by Mr. Buckingham, who was the executor named in each of these testamentary papers. In his answer to the citation when that one here involved was offered for probate,

Mr. Buckingham stated that the parties interested in the will theretofore probated will deny the validity of the paper writing of 1900, and say that it is not the last will and testament of Caroline Cloth, deceased. Moreover, both the probated will and that paper here involved were within the view of the court when the latter was offered for probate. The court could see that the two testamentary documents could not co-exist; that one or the other must fall. Therefore we say that, though it did appear to the probate court from an inspection of the paper propounded that four pages thereof were missing, it was wholly beyond the power of that court to adjudge, as it assumed to do, that the paper presented was not the last will and testament. The jurisdiction to deliver such a judgment was in the circuit court, and, in assuming to render that judgment, the probate court disregarded section 3905, Shannon's Code. The plain duty of the probate court, under the facts of this case and under the statute, was, instead of rendering the judgment which it assumed to render, to cause the fact to be certified to the circuit court that the paper offered as the will was contested, and to send to the circuit court the original will and certificate.

Another matter has been pressed upon us as affecting the jurisdiction of the circuit court in this cause. It is insisted for contestants that the propounding for probate of the will here involved in the probate court of Shelby county prior to any proceeding or order in that court in the matter of the Clarendon will, looking

Murrell v. Rich.

to a suspension or annulment of the probate of, that will, is a collateral attack upon the judgment of that court admitting the Clarendon will to probate. To sustain this insistence, we are referred to the following of our cases: *Johnson* v. *Gaines*, 41 Tenn. (1 Cold.), 288; *Townsend* v. *Townsend*, 4 Cold. (44 Tenn.), 70, 94 Am. Dec. 185; *Brien's Adm'r* v. *Hart*, 25 Tenn. (6 Humph.), 131; *Posey* v. *Eaton*, 9 Lea (77 Tenn.), 504.

We do not think these cases sustain the insistence for which they are cited. Substantially the same insistence above made was considered by the supreme court of the United States in *Gaines* v. *Hennen*, 65 U. S. (24 How.), 553, 16 L. Ed., 770, but that court held against the insistence. The same question was again before the same court in *Gaines* v. *City of New Orleans*, 73 U. S. (6 Wall.), 704, 18 L. Ed., 960, where that court said:

"But it is said the probate of the will in dispute cannot stand, because there was no direct action by the Louisiana court annulling the probate of the will of 1811. This was not necessary. The probate of the will of 1813, by the mere fact of its probate, necessarily annulled the will of 1811, so far as its provisions were inconsistent, and so far as the estate was not legally administered under it, and this precise point was decided in the *Hennen Case*."

The same view of the question was taken by the supreme court of Rhode Island in the case of *Bowen* v. *Johnson*, 5 R. I., 112, 73 Am. Dec., 49. Speaking of

131 Tenn. 26

the petition to have a second will probated, the court said:

"The prayer of such a petition incidentally involves the revocation of the probate of the will of prior date, so far as such will conflicts with the provisions of the will of later date. We can perceive no danger of confusion or injustice in allowing this double, but dependent, duty to be performed by the court upon a mere petition for the probate of the later will; and its simplicity and directness commend it, as a matter of practice, in other respects, to our favor."

Upon the same subject, in *Waters* v. *Stickney,* 12 Allen (Mass.), 1, 90 Am. Dec., 122, it was said:

"A court of probate has no more power by a decree establishing one testamentary instrument to preclude the subsequent probate of a later one never before brought to its notice than by a decree approving one account to discharge an administrator from responsibility for assets not actually accounted for."

Speaking to the same subject, in *Schultz* v. *Schultz,* 10 Grat. (Va.), 358, 60 Am. Dec., 335, the court said:

"And so, as it appears to me, if the later will contains an express clause of revocation of former wills, or contains a disposition of the estate incompatible with the provisions of the former, or from its general character may be inferred to be an entire new instrument intended to supersede the former, the court of probate should receive it and admit it to probate, leaving it to have such effect as the law would necessarily attach to it."

The supreme court of South Carolina, 75 S. C., 482, 56 S. E., 7, 9 Ann. Cas., 960, in *Re Mears' Estate,* said:

"But the probate of a will is practically a direct proceeding looking to placing a testator's property in the hands of his executors, and adjudging that all others, including administrators having it in possession, should surrender it to the executors for administration. Indeed, it is the proceeding laid down in the statute to the exclusion of all others. If the view should be adopted that a will could not be probated until a decree had been obtained in an independent proceeding annulling a previous grant of letters of administration, the whole question of will or no will would necessarily be tried in such independent proceedings, whereas the statute provides it must be tried only in proceedings instituted to have the will admitted to probate."

It is, of course, true as insisted by contestants, that the cases on which they rely establish the rule in this State to be that a judgment of the county court admitting a will to probate in common form cannot be collaterally attacked. But those cases do not sustain the insistence made by contestants, unless we should hold that the proceedings to probate the will involved in this cause was a collateral attack upon the judgment admitting the Clarendon will to probate. But we do not so hold. The proceeding to establish the will involved here was a direct proceeding looking to the making up of an issue *devisavit vel non* to be tried and determined in the circuit court, to the end that it

might be determined whether or not the paper here involved was the last will and testament of Caroline Cloth, deceased. This direct proceeding in no way collaterally assailed the validity of the proceeding for or the judgment probating the Clarendon will. The latter proceeding does not in any way respect question the correctness of the judgment rendered by the probate court in the former proceeding. The paper here involved does not speak as the will until established by the judgment upon the issue *devisavit vel non;* nor does that judgment assail, collaterally or otherwise, the correctness of the proceeding or the judgment for the probate of the Clarendon will. The judgment probating the will here involved on the issue *devisavit vel non* in the circuit court, if that judgment shall be affirmed, may, in connection with the revocatory clause of the will, render null the Clarendon will. But this result does not flow from any collateral attack made either upon the proceedings or judgment which established the Clarendon will. It flows from the law which gives vitality and force to the last testamentary act of the testator.

It results from what has been said that, in our opinion, the rule best sustained by reason and authority is that the proceeding to probate the missing page will was not a collateral attack upon the judgment probating the Clarendon will nor upon any of the proceedings leading up to that judgment.

Another question made by contestants upon the jurisdiction of the circuit court is, as they say, that the

case was appealed to the circuit court. It is true that an appeal was taken from the judgment of the probate court, but it is a mistake to suppose that the cause was carried into the circuit court by virtue of the appeal. That court acquired jurisdiction, as we have already pointed out, by virtue of the terms of the statute, and the fact that an appeal was taken from the clearly erroneous judgment of the probate court did not defeat the jurisdiction of the circuit court over the subject-matter; jurisdiction of the parties was had by their voluntary and unlimited appearance.

We now pass to a consideration of the assignments of error made by proponents upon the judgment of the court of civil appeals.

The first of these is that the court of civil appeals erred in sustaining the twentieth assignment of error made by contestants. The substance of the matter is that, during the trial, and while Mr. Buckingham was being examined as a witness, the missing page will was handed him, and he was asked what paper it was. His answer was that it was the last will and testament of Mrs. Caroline Cloth. This statement of the witness was objected to by contestants, and their objection was overruled, but later, in the progress of taking evidence, on motion of contestants the court excluded said statement on the ground that it was only the opinion of the witness Buckingham, and should not have been admitted in evidence. But, after all the evidence had been introduced and three arguments had been made to the jury, and six arguments remained

to be made, contestants moved the court for leave to reopen the evidence in order to allow them the opportunity to recall Mr. Buckingham, in order to ask him if he did not have a conversation with Henry J. Lenow after the death of Mrs. Cloth, in which Lenow referred to the execution by her of the will of August 1, 1900, the same here involved, to which Buckingham replied:

"Yes; she made that will, but after she went to Germany she got out with some of the heirs of Herman Cloth and destroyed it or made away with it on her return, and that she died without a will."

The further prayer of the motion was that, if Mr. Buckingham denied making this statement to Lenow, then contestants be allowed to introduce Lenow to contradict Buckingham. The court overruled the motion on the ground that, under all the evidence in the cause, such a statement, if made by Buckingham, would have been but the expression of an opinion and, as such, not competent. We think the action of the circuit judge was correct, and that the court of civil appeals was in error in holding to the contrary. The cause had passed the stage where contestants were entitled to introduce evidence, but by leave of court in the exercise of a sound judicial discretion, and nothing short of an abuse of such discretion would justify us in holding the trial judge to be in error. There was no abuse here: (1) Because the statement of Buckingham, if made to Lenow, considered in the light of the undisputed evidence in the cause, was but an opinion, though in form stated as a fact; and

(2) because no sufficient legal excuse was shown for not having offered this evidence at the proper time.

The second assignment of error relied on by proponents is that the court of civil appeals erred in sustaining the twenty-second assignment of error made in that court by the contestants. The matter in question is the action of the circuit judge in excluding, when offered in evidence during the trial of the cause, the following document:

"Agreement. State of Tennessee, County of Shelby: *In re Caroline Cloth's Estate.* We agree that the will of 1898 of Mrs. Caroline Cloth, probated in Shelby county, Tennessee, is the last and valid will and testament of the said Mrs. Caroline Cloth, and we will hereafter stand by this agreement."

The agreement was signed: F. Bruce Garrett, by Bell, Terry & Bell, A. Geo. F. Chapline, Attorneys. It was also signed by John M. Shaller and Mrs. Mary L. Shaller, by Paul W. Evans, and by Jacob Getto, *et al.* (the names of his codefendants being set out), by Frank Zimmerman, Attorney. It was also signed by Miles S. Buckingham, by Caruthers Ewing.

The transcript discloses an objection made to the competency of the foregoing document as evidence by the proponents. It was insisted by the proponents that the document was not signed by Mr. Buckingham, but that it was an agreement made by his attorney, Mr. Caruthers Ewing, in the absence of Mr. Buckingham; but the court, on the ground that Mr. Buckingham, after he learned of the execution of this agree

ment by his attorney, did not disaffirm it, held that he had thereby ratified the act of his attorney. Counsel for contestants insisted that the paper was competent as going to contradict the statement made by Mr. Buckingham to the effect that the paper which he held in his hand was the last will and testament of Mrs. Caroline Cloth, that statement being the same which we have heretofore commented on in our discussion of the preceding assignment of error, and it was during the discussion between counsel and the court as to the admissibility of the agreement involved under the present assignment that the court reached the conclusion that he had been in error in admitting in evidence the statement by Mr. Buckingham aforesaid, and the court, having reached that conclusion, excluded this statement from the consideration of the jury, and, that being excluded, the court held that the agreement set out in the first part of this assignment was incompetent. The court of civil appeals held that the trial court was in error. We think, however, that the action of the trial court was correct, and that the court of civil appeals was in error. We are unable to see how the admission of the agreement in evidence would have shed any light upon the issue *devisavit vel non* which was on trial before the jury. At most, so far as it bore on that issue, the only purpose it could have served would have been to convey to the jury the fact that at one time, to wit, when the agreement was signed, Mr. Buckingham's attorney, Caruthers Ewing, was of the opinion that the Clarendon will covered by

the agreement was the last will and testament of Mrs. Caroline Cloth, deceased, and that Mr. Buckingham, after learning of the facts on which his attorney's opinion was based, coincided therein. Such a matter of opinion was certainly incompetent as evidence.

The third assignment of error made by proponents is that the court of civil appeals erred in sustaining the fifteenth assignment of error made in that court by contestants. That assignment was that the trial court erred in charging the jury as follows:

"So the law presumes that, if the will is in the possession and custody of its maker, and at the time of her death it is found that the will is mutilated, in the absence of any explanation of that, the law presumes that she intended thereby to revoke the will. . . . A presumption is an inference that the law draws from certain proven facts, so that, if you prove the will was in the custody of Mrs. Cloth and in her possession, and immediately after her death it was found in a mutilated condition, unexplained, the law presumes that she revoked it."

The two excerpts above set out oppear in the charge of the court. Immediately following the first excerpt, and immediately preceding the second, the court charged the jury as follows:

"So, in this case, the contestants claim that, inas-much as there are missing four pages, that constitutes a mutilation, and that is a mutilation in law, and, it constituting a mutilation, the presumption arises that Mrs. Cloth revoked the will. That presumption ob-

tains, and can obtain, only in the event the jury find that this paper, or will, was in the possession of Mrs. Cloth, and that it was found after her death among her papers or repositories."

Immediately following the second excerpt, the court charged the jury as follows:

"On the other hand, the proponents claim that before that inference or presumption is well founded there must be evidence of facts sufficient to found it upon. There must be evidence that this will was in her possession and custody; and their theory of the question is that, prior to Mrs. Cloth's death, or at about the time of her death—just before or just afterwards—that her house and papers were ransacked, and that this missing part was either purposely, or carelessly, or accidently lost or removed from the will. This legal presumption to which I refer is what we call in law a rebuttable presumption. That means that evidence may overturn the presumption, if the facts and circumstances before the jury in evidence are such as to warrant the jury in the belief that Mrs. Cloth did not remove the missing part, or authorize its removal, but that some other person did it; then that overturns that presumption—the presumption that she did do it."

Further on the court charged the jury among other things, as follows:

"If the proponents should merely show that somebody had opportunity to get the will, had access to it, that would not overthrow the presumption, but before

the presumption is overthrown, they must go further and prove such facts as would reasonably justify the jury in finding that some other person did, either purposely or intentionally, remove the paper.''

In the light of the whole charge, and especially of those portions of it which we have above set out, in addition to those on which the contestants' fifteenth assignment of error was based, we are unable to see that reversible error was committed by the court in the excerpts complained of. We do not understand, as was insisted by contestants, that by the excerpts complained of the court told the jury that a presumption of revocation would only arise when unexplained upon finding a mutilated will in the possession of the testatrix, nor do we think the word ''immediately,'' as used in the excerpt from the charge complained of, can fairly be said, considering the entire charge, to have the meaning attributed to it by contestants. Considering the entire charge in connection with the two excerpts, we conclude that the court of civil appeals was in error in sustaining the fifteenth assignment of error made by the contestants.

Proponents made a fourth assignment of error which we need not discuss.

Passing now to the assignments of error made by contestants, we take up first the single assignment made by Mrs. Mary L. Shaller, which raises the question that the court of civil appeals should have dismissed this suit. We think not, and therefore overrule this assignment.

We now come to discuss the assignments of error made by the other contestants which appear in their petition for *certiorari* filed on May 11, 1914, on pages 40, 41, and 42 thereof, and which are numbered from 1 to 5, inclusive. The first, second and third of these assignments raise questions already disposed of in our discussion of the case. The fourth assignment raises the question that contestants were entitled to a peremptory instruction for which they moved, and which was refused by the trial judge. They say the court of civil appeals was in error in refusing to reverse the judgment of the trial judge for that reason. There was ample evidence to carry the case to the jury; wherefore we overrule the fourth assignment of error. The fifth assignment of error is:

"The learned court of civil appeals committed most prejudicial error against cross-petitioners in pretermitting numerous assignments of error and not determining same at all. These assignments of error are Nos. 4 to 11, inclusive, 13 to 14, 17 to 19, inclusive, and 21."

This fifth assignment of error does not comply with the twelfth rule of this court. 126 Tenn. (18 Cates), 720, 160 S. W., viii; Acts 1907, ch. 82; *Mayor and Aldermen of Nashville* v. *Patton,* 125 Tenn., 361, 143 S. W., 1131. The rule specifies by reference to rules 14 and 15 (126 Tenn. [18 Cates], 721, 724, 160 S. W., ix, x) the form in which assignments of error shall be made, and expressly states (126 Tenn. [18 Cates], 720, 160 S. W., viii), that:

Murrell v. Rich.

"The assignments of error, briefs, and arguments filed in the court of civil appeals cannot be refiled here in compliance with this rule, as the case is brought before this ourt for error in the action of the court of civil appeals, and not of the trial court."

For the reason indicated, we overrule the fifth assignment of error.

We find, beginning at page 106 of the brief for contestants filed in support of the fifth assignment of error to which we have referred, a discussion under the head "Pretermitted Assignments of Error should have been Sustained by the Court of Civil Appeals." Following this are set out seven special requests made by the contestants on the trial of the cause as to which they complain because the circuit judge did not embody them in his charge to the jury, and as to which they say the court of civil appeals was in error because it pretermitted the assignments of error filed in that court covering each of these matters. This method of setting out the assignments of error for the purpose of discussing them in the brief does not cure the defect we pointed out in the fifth assignment of error. The rule of the court above referred to must be observed not only by counsel assigning errors, but by this court, because the particular rule involved is, in substance, a requirement of the statute creating the court of civil appeals and regulating the method of securing in this court a review of a judgment or decree of the court of civil appeals.

It is not improper, however, to say that we have examined the questions made in the brief as above stated, and, if the same had been correctly assigned, we would not hold the court of civil appeals in error for failure to reverse the judgment of the circuit court; in other words, we think the charge given by the circuit judge embodied every principle of law correctly set forth in the special requests.

It results from what has been said that the judgment of the court of civil appeals will be reversed, and that of the circuit court affirmed.