---

(163 App. Div. 213)

### In re HORTON'S WILL.

(Supreme Court, Appellate Division, Second Department. June 12, 1914.)

1. WILLS (§ 310*)—PROBATE—PROCEDURE.

   Where, on an application for probate of a will, the surrogate was apprised that testator had executed a later will revoking the one offered for probate, and that such later will had been probated in another state, the surrogate should not have probated the earlier will, though the contestant did not present the later one; the important consideration being, not whether the contestant did, but whether she could have presented the later will as provided by Decedent Estate Law (Consol. Laws, c. 13) § 34.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 735–737; Dec. Dig. § 310.*]

2. WILLS (§ 314*)—PROBATE IN FOREIGN COURT—PROBATE IN NEW YORK—PROCEDURE.

   Where, on an application to prove testator's will in New York, his widow filed a contest, and showed that he had executed a later revoking will, which had been probated in Ohio, but that the Ohio probate court had refused to permit the will to be taken from its files to be proved in New York, a commission should be issued from the New York court directing the proof of such later will before the commissioner, after which the surrogate's court could proceed to determine which of the wills should prevail.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 741; Dec. Dig. § 314.*]

Appeal from Surrogate's Court, Westchester County.

Application for probate of the last will and testament of George W. Horton, deceased. From a decree of the Surrogate's Court of Westchester County, probating a will alleged to have been executed in 1902,

Alice Horton, widow, appeals. Reversed and remitted to surrogate, with directions.

Reargument denied 148 N. Y. Supp. 1121.

Argued before JENKS, P. J., and BURR, CARR, STAPLETON, and PUTNAM, JJ.

M. Linn Bruce, of New York City, for appellant.

Henry G. K. Heath, of New York City, for respondent.

JENKS, P. J. When Jane Dickie, as executor, offered the will of Horton for probate in the county of Westchester, showing that Horton left realty and personalty in said county, and alleging that he was a resident therein, Alice Horton, who was cited as wife, appeared, objected to the probate, and answered that she and Horton had intermarried in 1912; that the will offered was not the last will of Horton, forasmuch as it was made in 1902, and he had made another will in 1913. She set forth a copy of the latter and of its attestation clause. And she answered, further, that Horton when he died was a resident in Ohio, that the said will was duly probated in a probate court of that state, and that she had been appointed and was the executor thereof. The later will is not only contrary to but contradictory of the earlier will, and expressly revokes and annuls all former wills. On the hearing, Jane Dickie produced testimony and prayed for probate. Alice Horton produced an exemplified copy of the will of 1913 and record of the probate thereof in the probate court of Ohio. Jane Dickie and others of similar interest objected that the said probate court of Ohio had no jurisdiction of the heirs of Horton who reside in New York, and insisted that they were not bound by the proceedings in the Ohio court. The objection was sustained under exception. An exemplified copy of the will and of the probate thereof were marked for identification. The learned surrogate ruled:

"So far as this exemplified copy, I am satisfied these people are not bound by it. There is nothing before me that shows me there is another will in existence. I give him [i. e., the counsel for Alice Horton] an adjournment of two weeks to amend his answer or proceed in the regular way."

Thereupon Alice Horton offered a certified copy or exemplified copy of the letters testamentary issued on the probate proceedings in the probate court of Lake county, Ohio. This was objected to on the same grounds, and excluded under exception. Exemplified copy of the letters testamentary was marked by the contestants for identification. At the adjourned day, the petitioner moved for probate of the will of 1902, and offered a certain stipulation as to the provisions of the Ohio statutes and their interpretation. Alice Horton then offered so much of a proponent's exhibit as—

"contains certified copy of a will of George W. Horton, purporting to have been executed on the 8th day of August, 1913, being contained in an exemplified copy of the record of probate of said purported will of George W. Horton in probate court of Lake county, Ohio, September 16, 1913, Clarke H. Nye, Probate Judge."

This was objected to, in that there was offered only a portion of an exemplified document, in that it was a copy of a paper writing purporting to be a paper that is not binding on the parties in this state,

but that the original should be offered, also in that it appeared from the full paper that the parties in this state have not been served with process in the jurisdiction of the court, and also in that it was nothing more than a paper writing, and it does not go beyond that as it is now offered, and, finally, on the ground of immateriality and irrelevance. The surrogate ruled:

"There is no question but that a certified copy of a deed or mortgage recorded in this state is admissible in evidence in this court. There is some question, however, as to the admissibility of a certified copy of a will which was proved or recorded in a foreign state, especially where no notice was given to the heirs at law and next of kin, as in this case. I doubt its admissibility."

The objection was sustained under exception. And it also appeared on the record that Horton in vain had applied to the said probate court of Ohio to take from its files the original will of 1913. Both sides rested. And thereafter the surrogate filed findings of fact and conclusions of law in favor of the admission of the will of 1902. The decree followed, and contained a provision:

"That the objections contained in the answer of the contestant, Alice M. Horton, be dismissed as unproven and unsustained."

[1] This controversy is not altogether like unto one between living litigants, with an issue of original rights of meum and tuum. For here the rights in dispute are in the property of another, derivative from his disposition, to be effective after his death. And the state has covenanted with the dead that it will see to it that his disposition shall prevail. The paramount consideration of the courts is to maintain this covenant. The learned Surrogate's Court was apprised, and we are apprised in this case by pleading and by contention serious and substantial, that this testator left a will executed in 1913, and that thereby he specifically revoked and annulled all previous wills. It is the last utterance of the testator that is heeded, for this power of testamentation is ambulatory. I think that there should be every opportunity to establish such will in this proceeding. The learned surrogate commendably continued the proceedings. It was not to be expected that he should prolong continuance indefinitely. But the important consideration is, not whether the contestant did, but whether the contestant could have presented a will which as pleaded revoked the earlier will. Section 34, Decedent Estate Law. I have suggested considerations which take this kind of case out of the category of litigations wherein courts must decree to the swift and to the vigilant according to the procedure prescribed.

[2] If it be the fact that the final will, at least final as to the will of 1902, of this testator exists, but was filed and now remains in another state, and yet such will, if before this surrogate or this court, may overthrow the will of 1902, I think that a commission should be issued to take proof of the later will. In such case the commissioner is considered as an officer of the court, and the production of the will before him would be held to be before the court in the person of the commissioner. If as the result of such procedure the alleged will is proved in this Surrogate's Court, then the Surrogate's Court can pro-

ceed to the determination whether the will of 1902 or that of 1913 should prevail.

This practice is supported by Spratt v. Syms, 104 App. Div. 232, 93 N. Y. Supp. 728; Russell v. Hartt, 87 N. Y. 19; Matter of Delaplaine, 45 Hun, 225; Matter of Cameron, 47 App. Div. 120, 62 N. Y. Supp. 187, affirmed 166 N. Y. 610, 59 N. E. 1120. I think that our disposition of this case is within our powers in appeals from the Surrogates' Courts. Sections 2586 and 2587, Code of Civil Procedure. See, too, Redfield's Law and Practice of Surrogates' Courts (7th Ed.) pp. 1144 and 1145; Jessup's Surrogate Practice (4th Ed.) 196–219; Heaton's Surrogates' Courts, §§ 1242, 1243.

Decree reversed, without costs, and proceedings remitted to the Surrogate's Court of Westchester County, to be continued in accord with this opinion. All concur.