R. Q. LILLARD v. J. B. TOLLIVER et al.*

(*Nashville.* December Term, 1925.)

Opinion filed May 22, 1926.

1. SUPREME COURT PRACTICE. Error. Court of Appeals.

All assignments of error in the Court of Appeals which are not questioned, by a petition for **certiorari** to the Supreme Court are waived by the parties; as where the Court of Appeals only having sustained two of numerous assignments of error, having pretermitted all other such assignments, the Supreme Court has no jurisdiction to pass upon the soundness or unsoundness of the pretermitted assignments. (Post, p. 305.)

Citing and distinguishing: Moore v. Steele, 29 Tenn., 562; Davis v. Baugh, 33 Tenn., 477.

Code cited and construed: Code, 1858, secs. 2173, 2177, 4227; Shannon's Code, secs. 3905, 3909, and 6065.

2. WILL. Contest. More than one will offered for probate.

On an issue of devisavit vel non, it is proper to permit the propounding of other wills than the will first offered for probate, and against which a contest was instituted, that the jury under proper instructions may determine which of the wills is the will of the decedent. (Post, p. 306.)

Citing: McBee v. Bowman, 89 Tenn., 132; Murrell v. Riche, 131 Tenn., 378; Walker v. Berble, 5 Tenn. Civ. App., 651; In re Wilson, 117 Cal. 262; In re Martin's Will, 141 N. Y. S., 784; In re Horton's Will, 148 N. Y. S., 18; Floore v. Green, 83 S. W., 133; Haskins v. Holmes County Community Hospital, 135 Miss. 98; Griffin v. Ferand, 1 Curteis, 97; Kellican v. Lord Palmer, 1 Lea, 659, 161 English Reprint, 241.

3. SAME. Same. Nature of proceeding. Parties.

An issue of devisavit vel non is a procedure in rem involving the distribution of the res, the estate. All persons who have any

claim of interest as heirs or next of kin, or the beneficiaries of other wills, may lawfully intervene; the policy of the law being to determine at once where the testator's estate shall go. (Post, p. 311.)

4. **WILLS. Probate. English ecclesiastical law.**

The probate of a will is governed by the rules of the English ecclesiastical law, except where a change by Statute, or the spirit of our institutions make application impossible or unwise; and the proceeding is not one at common law or in equity. (Post, p. 312).

---

### FROM WILSON.

---

Appeal from the Circuit Court of Wilson County to the Court of Civil Appeals, and by *certiorari* to the Supreme Court.—HON. J. M. GARDENHIRE, Judge.

W. S. FAULKNER and JAS. B. RICHARDSON, JR., for plaintiff in error.

A. H. ROBERTS, F. P. McMILLAN, T. B. FINLEY, WALKER & WALKER, and CHAMBERS, WILLIAMS & FELTS, for defendants in error.

MR. KEEBLE, Special Justice, delivered the opinion of the Court.

This case involves the determination of the single question as to whether or not, on the trial of a will contest in the circuit court, the judge may submit to the jury more than one will. Many other questions were raised in the court of civil appeals, but, as this case is before this court on a petition for *certiorari,* all assignments of error in the

154 Tenn.—20.

court of civil appeals which are not questioned by a petition for *certiorari*, are waived by the parties. Therefore this court can make no inquiry into many of the questions which were argued at the bar, and more or less presented in the briefs.

Miss Priscilla Tolliver died in Wilson county on or about November 30, 1922. Soon after her death there was offered for probate, in the county court of Wilson county, a will of Miss Tolliver dated December 1, 1921. In this will Dr. R. Q. Lillard was named as executor. This will was probated in common form on December 2, 1922. Three days later proceedings were instituted in the county court of Wilson county by J. B. Tolliver and others, seeking to contest the probate of the will of December 1, 1921, upon the ground that it was procured by fraud and undue influence.

Upon the filing of this petition of contest, an order was entered in the county court, transferring the contest over the will of December 1, 1921, to the circuit court.

After the filing of the petition of contest in the county court of Wilson county, A. A. Adams, Sr., the executor of a will of the 20th day of May, 1917, filed a petition in the county court of Wilson county offering this will for probate. In response to the petition offering for probate the will of May 20, 1917, Dr. R. Q. Lillard, executor of the will of December 1, 1921, entered a written motion to dismiss this petition, upon the ground that there had already been filed in the court a paper writing purporting to be the last will and testament of Miss Tolliver, and therefore there could be no consideration of an offer of probate of the other will until the determination by the circuit court of the contest over the first will. This mo-

tion was sustained, and the petition of Adams was dismissed, to which action of the court there was an exception seasonably made, and an appeal prayed to the next term of the circuit court of Wilson county.

In the circuit court a motion to consolidate the causes was made by counsel for Adams, over the objection of Lillard; but the trial judge granted the motion and proceeded to hear the cause, sitting with an intervention of a jury. Both wills were propounded at the trial.

The trial judge submitted to the jury the controversies in regard to both wills, which, briefly stated, were that the jury should first consider the will executed on the 1st day of December, 1921, and, if the jury should find this will to be the valid will, that would end the case, and that will would be set up. If, however, the jury should find that the will of December 1, 1921, was the result of undue influence, or other improper conduct, then the jury should determine and pass upon the earlier will.

It appears from the record that the earlier will was not contested upon any ground, save and except that it was revoked by the will of December 1, 1921. The jury reported in favor of the will of May 20, 1917, and against the will of December 1, 1921. Thereupon judgment was entered by the court, sustaining the will of May 20, 1917, as the last will and testament of Miss Priscilla Tolliver.

As stated above, the case was taken up to the court of civil appeals by an appeal in the nature of a writ of error. Many assignments of error were made by the plaintiff in error Lillard.

The court of civil appeals sustained only two assignments of error—assignment No. 12 and assignment No.

25. These two assignments are long and contain different statements of the same proposition.

The substance of these assignments is that the trial judge erred in permitting the presentation to the jury of two wills— the first will offered for probate in the county court, and which was certified to the circuit court when contest proceedings were instituted; and the other, the will of the 20th day of May, 1917, which had been offered for probate in the county court by the executor of that will, and in which proceedings, after the order of dismissal of the proceedings upon the ground hereinbefore stated, the record was certified up to the circuit court. This action of the trial judge was actually carried out by an order of consolidation of the two causes and the propounding of the two separate and distinct wills before the same jury. All other assignments were pretermitted.

The court of civil appeals based its decree upon the proposition that under the statutes of this State only one will could be propounded to a jury in a circuit court during the trial of issues of *devisavit vel non*.

As we understand that opinion, this conclusion was reached upon two grounds: (1) That the language of the statute itself does not permit the submission of more than one will to the same jury; and (2) that, whatever may be the broad discretion of a trial judge as to the consolidation of causes, he is not permitted to consolidate causes where the parties of one cause have no interest in the issues of the other cause.

In declaring the jurisdiction and powers of the circuit court, at section 6065 of Shannon's Code, it is provided that circuit courts shall "have exclusive jurisdiction to

try and determine all issues made up to contest the validity of last wills and testaments.''

In section 3905 of Shannon's Code, it is provided: ''Where the validity of any last will or testament, written or noncupative, is contested, the county court shall cause the fact to be certified to the circuit court, and send to said court the original will, and shall require the contestant to enter into bond,'' etc.

Section 3909 provides: ''At the first term after the filing of the certificate aforesaid, and will, in the office of the clerk of the circuit court, an issue shall be made up, under the direction of the court, to try the validity of the same.''

These are all the statutory provisions in reference to the practice.

Probate proceedings in regard to wills are neither proceedings as proceedings in equity, nor proceedings as proceedings in the circuit courts administering the common law. On the contrary, they are proceedings originating under the English system in the ecclesiastical courts, which were separate and distinct tribunals from courts of equity or courts of law.

In the conduct of causes in the ecclesiastical courts, the proceedings were not controlled by rules that prevailed either in courts of equity or in common-law courts. The rules and practice of that court were as separate and distinct from the rules and practice in courts of equity and in courts of law, as the rules of practice in courts of equity were separate and distinct from the rules of practice in the common-law courts.

When the legislature of the State of Tennessee invested the circuit courts, which were the tribunals es-

tablished to administer primarily the jurisdiction of the courts of common law, with jurisdiction to try matters of probate, they established a procedure to be governed and controlled by the practices in ecclesiastical courts, as far as those practices were applicable to our modern conditions.

In the case of *Moore* v. *Steele,* 10 Humph., 562, GREEN, Judge, says, in passing upon the number of witnesses necessary to prove a will of personalty, after quoting from Williams on Executors and Toller on Executors:

"These authorities show, that the ecclesiastical courts had exclusive jurisdiction of the probate of wills; that those courts were governed by the rules of the civil law; that by the civil law the testimony of two witnesses is requisite; and that the common-law judges, in the court of delegates, in appeals from the ecclesiastical courts, were bound by the rules of the civilians.

"It is then the established law in England that two witnesses are indispensible to prove a will in solemn form. And why shall we not hold this to be the law of this State? Because it is said, the ecclesiastical courts were governed by the civil law; but that, as we have no ecclesiastical courts, the common-law mode of proof should obtain in all our tribunals.

"The answer is that, although our courts of probate are differently organized from the courts of probate in England, nevertheless the law governing the modes of proceeding is the same, except as it may have been altered by statute, or the nature of our institutions; and there is certainly no reason to abandon the principle in question; for, if the courts were to decide that one witness would

be sufficient proof of a will, doubtless the legislature would interpose, and by statute require two."

In the case of *Davis* v. *Baugh,* 1 Sneed, 477, Totten, Judge, in passing upon the rule of law in regard to the age of an infant who could make a will, says:

"It is true that this rule, derived originally from the Civil Law, is the rule of the English ecclesiastical courts having jurisdiction of the subject of wills and intestates' estates. And their rules of decision upon those subjects have been received and admitted by immemorial usage as a part of the unwritten or customary law of England; recognized and sanctioned in the common-law courts at Westminster. . . .

"So that those rules of decision have become incorporated into, and form a part of the common law of England, which as a system of law has been admitted and adopted here, so far as was consistent with the nature and genius of our institutions. Hence, in testamentary cases, our courts constantly recur to the reported judgments of the eccesiastical courts in similar cases, for rules of decision."

These cases but typify the rule laid down in other cases, to the effect that the probate of a will is governed by rules of ecclesiastical law, except where a change by statute, or where the spirit of our institutions makes the application of them impossible or unwise, and that the proceeding is not a proceeding either at common law or in equity. *Franklin* v. *Franklin,* 90 Tenn., 44, 16 S. W., 557; *Brown* v. *Brown,* 86 Tenn., 277, 6 S. W., 869, 7 S. W., 640.

Under the rules adopted by this court, the filing of a contest in the county court transfers the jurisdiction for

further proceedings in the matter of probate to the circuit court. The proceedings in the circuit court are original and not appellate. *Murrell* v. *Rich*, 131 Tenn., 378, 175 S. W., 420.

The regulation and control of the advent of parties into the proceedings is vested in the circuit court. *Patton* v. *Allison*, 7 Humph., 320. As stated by the court in that case, all persons interested, either for or against the will, have a right to be made parties.

In the case of *Hodges* v. *Bauchman*, 8 Yerg., 186, CATRON, Judge, says: "All who are interested may become parties in conducting the litigation in case of a contested will, and, if they do not, it is indispensable to the repose of society that they be concluded."

Probate proceedings are not strictly suits with parties plaintiff and parties defendant, where the plaintiffs demand judgment against the defendants. They have, from time immemorial, been declared to be proceedings *in rem*. The purpose of such proceedings is to determine upon the disposition of the property of decedents, to apply it in an orderly way to the payment of debts, and to distribute the remainder to those entitled to receive it either by will or under the statutes of descent and distribution. Such proceedings are more akin to bills filed to administer the estates of insolvent corporations, or bills in the nature of general creditor's bills, or similar to proceedings in admiralty; similar also to the statutory proceedings in reference to the enforcement of mechanics' liens claimed upon real property. In each one of these proceedings, all persons are permitted to intervene and become parties who assert rights to the property itself.

It would be intolerable, where the purpose of a judicial proceeding is to determine the rights in property and to make orders in reference to the ultimate distribution of it, to undertake to enforce the strict common-law rules in reference to parties to proceedings. Any other principle than the principle that declares these contests to be proceedings *in rem* would result in interminable delay and confusion of rights arising out of the interest of different courts and juries, and would almost invariably absorb the *corpus* of the estate in the costs and expenses of litigation. That a contest of this character is a proceeding *in rem,* and that the most liberal rule obtains as to parties, have been recognized as rules governing these cases from the very earliest days.

In the case of *Patton* v. *Allison,* 7 Humph., 320, GREEN, Judge, says: ''All persons interested either for or against the will have a right to be made parties. It is a proceeding *in rem,* and the judgment binds all persons whether parties on the record or not.  .  .  .   It must follow, that the court in which the issue is formed and tried, must have all necessary power to effectuate justice in the case, and to this end may permit parties on the record to withdraw, and new parties to intervene as in its discretion it may see the ends of justice require; and this whether they appear in the attitude of plaintiffs or defendants; for, being a proceeding *in rem,* both parties are actors, and, in the strict sense, none are defendants, sued and made parties against their will.''

In the case of *Brown* v. *Brown,* supra, it is said that:

'' 'The judgment of a probate court, allowing proof of a will and admitting it to probate, is in the nature of a proceeding *in rem;* that is, an adjudication pronounced

(as its name imports) upon the status of a particular subject-matter, by a tribunal having competent authority for that purpose, and therefore binding and conclusive upon the rights of all persons interested in the property to be administered, though they are not named as parties. . . .'

"It may be sufficient to say that in proceedings *in rem* all persons in interest are parties, or, as it is sometimes said, the whole world are parties, and any person having an interest in the property may interpose a claim and prosecute an appeal from the sentence or decree; and it is said that notice is served upon the thing itself, and that thereby all persons interested are presumed to have notice, because it is the part of common prudence for all persons who have an interest in the property to guard that interest by persons who are in a situation to protect it."

In the later case of *Murrell* v. *Rich,* 131 Tenn., 378, 175 S. W., 420, a statement from the case *In re Mears' Estate,* 75 S. C., 482, 56 S. E., 7, 9 Ann. Cas., 960, was quoted with approbation, as follows:

"But the probate of a will is practically a direct proceeding looking to placing a testator's property in the hands of his executors, and adjudging that all others, including administrators having it in possession, should surrender it to the executors for administration. Indeed, it is the proceeding laid down in the statute to the exclusion of all others. If the view should be adopted that a will could not be probated until a decree had been obtained in an independent proceeding annulling a previous grant of letters of administration, the whole question of will or no will would necessarily be tried in such independent proceedings, whereas the statute provides

it must be tried only in proceedings instituted to have the will admitted to probate."

In *Hodges* v. *Bauchman,* 8 Yerg., 186, it is said: "It was made the duty of the court of probate, to ascertain whether the will had been duly executed, without reference to individuals interested in the result of admitting the will to record, the court was bound to act upon the subject-matter, and to settle the title to the property, late of the testator, left without an owner. The interests of society admitted of no delay."

The principle underlying these cases is to determine in one proceeding, not only who is entitled to inherit the property from the deceased, but also to hasten the administration of his estate and the payment of debts. Unless this court is bound by some precedent, no rule of practice should be established that would tend to deprive those rightfully entitled to the estate to come into possession of the estate, nor to delay the rightful creditors of the deceased in the realization of their claims.

Public policy demands that the court should shorten, as far as possible, litigations, lest the estate should be more or less absorbed as a result of expensive court costs and other expenses of litigation.

All persons who have any possible interest in the estate, either as heirs, as legatees or devisees, under one or more wills, may be said to be proper parties in such proceedings.

In the light of these cases, it cannot be denied that, if this case had been tried solely upon the question as to whether or not the will of December 1, 1921, was a valid will, not only those entitled to inherit the estate of Miss Priscilla Tolliver under the statutes of descent and dis-

tribution would have been entitled to contest it, but also any person claiming under a prior will or a later will would have been permitted to contest the will in controversy upon any proper ground.

In order to make such a contest, any person falling within either of these classes would have been permitted to appear in court as parties by petition, and would have had status in the case as parties.

The consolidation of the causes did not in any manner extend the rule as to the parties that control the case, and, in so far as the consolidation brought into the case parties who were not interested in the decision, it must be concluded that there is no merit in this contention.

There was, then, no prejudicial error committed against the proponent of the will of the 1st day of December, 1921, in so far as the order of the trial court which is complained of brought into the case parties who had no interest in the common property.

The proceeding being a matter *in rem,* and the *res* being the estate of the deceased, all persons who had any just or colorable claim would be entitled, as a matter of right, to appear and participate in the trial.

This brings the case down to the single question as to whether or not more than one will may be submitted to a jury at the same time. There is no case in this State to the effect that this is not permissible.

It is conceded at the bar, and sustained by the cases, that the beneficiaries under the first will, of the 20th day of May, 1917, were entitled to offer this will in evidence as tending to show that the will of December 1, 1921, was not the real and true will of the testator who executed it.

In view of the fact that there is no tangible distinction in the effect upon a jury in permitting the jury to pass upon a prior will and in permitting the jury to receive that will in evidence in passing upon the later will, the beneficiaries under the latter will were not prejudiced in any legal way by the action of the trial judge. Precedents are found in our cases, though not precisely deciding the question.

In the case of *McBee* v. *Bowman,* 89 Tenn., 132, 14 S. W., 481, there were two wills submitted to the same jury. While it is true that in that case the precise point was not raised and expressly decided, yet the case is a case in which the practice was followed. The case was reversed upon two assignments of error. The first ground upon which the case was reversed was that the trial judge had permitted the proponents of the second will to open and close the case upon the ground that they had admitted the execution of the first will, and therefore the burden shifted upon them to establish the second. The court held that this was error because the proponents of the first will were the real plaintiffs in the case, and carried the burden all the way through, and were entitled to close the argument. It would have been unnecessary for the court to have passed upon the question as to who should be entitled to open and close the argument, unless the court recognized the practice that two wills might be submitted to the same jury.

In the case of *Murrell* v. *Rich,* 131 Tenn., 378, 175 S. W., 420, there were several wills offered for probate. All of the various wills were submitted to the jury, and the jury was permitted to pick out what they regarded as the true last will and testament of the deceased. While

in this case no express rule was formulated and expressed, the sanction of the court was given to the practice.

In the case of *Walker* v. *Verble,* 5 Tenn. Civ. App., 651, the court of civil appeals said there might be a consolidation of such contests, at least, by the consent of parties.

These are all of the cases bearing even indirectly on the question at issue. In neither of the cases decided by this court was there any suggestion that the practice was improper, and these cases are persuasive in that they express what seems to be the conception of the bar, meeting the approval of this court. Such a practice is recognized by the text-writers.

Mr. Page, in his work on Wills, at section 323, says:

"The court may, in its discretion, consolidate proceedings instituted by different persons for the purpose of having different instruments each probated as the last will and testament of a decedent. Separate contests of a will and a codicil, or of two wills, each claimed to be the last will of testator, may be consolidated by the court and heard together."

Mr. Schouler, in his Sixth Edition of Wills, states the rule as follows:

"Contest may arise over the probate of conflicting testamentary papers, each of which has been propounded as the instrument truly entitled to probate. Here the object being to ascertain which, if either or any of them, embodies in testamentary form the last wishes of the deceased, proof of the instrument of latest date comes first in order. A similar rule applies where the validity of particular codicils is in dispute.

"Every will being revocable during the testator's lifetime, probate should be granted of the instrument or instruments only which constitute his last will. Accordingly, in case of a contest over two or more wills, issue joins first and most naturally on that which was executed latest. Any distinct will propounded for probate, which appears to have been executed as the statute requires and preserved intact, is presumed to express the testator's latest wishes; but this presumption may be rebutted by the production of a later will, or other evidence of a contradictory nature." Schouler, on Wills (6th Ed.), section 764.

Under substantially similar statutes, other courts have adopted this rule and followed it in practice.

In reference to the cases in other jurisdictions:. It is conceded in the opinion of the court of civil appeals that in the case of *In re Wilson*, 117 Cal., 262, 49 P., 172, 711, it was proper to submit the will and a codicil to the same jury; and furthermore that it appeared that the joint hearing was more or less by consent.

A careful examination of a number of cases shows that only occasionally has the precise point been discussed in other cases, and sometimes the discussion was more or less incidental, rather than crucial in the lawsuit.

However, in the case of *In re Martin's Will*, 80 Misc. Rep., 17, 141 N. Y. S., 784, is found an interesting discussion of the proposition in a very full and elaborate opinion. Under the statutes of New York, a surrogate conducts a probate court and exercises practically the same jurisdiction as is exercised by the circuit court judge, as well as the preliminary steps in probate proceedings.

In this opinion it is held that the practice prevailing in the ecclesiastical courts still obtains in the probate courts in this country, except when otherwise changed by statute, stating:

"From this extended survey of the surrogate's proper jurisdiction over probate proceedings, it must be apparent that this court was intended to continue on common-law foundations, except where the statute otherwise provides. Now, there is nothing in the statute or in the late adjudged cases about the consolidation of separate proceedings to probate various testamentary scripts of one testator. Therefore we must look to the testamentary common law for the true procedure. . . .

"I alluded to the inherent power of a surrogate to compel the production of any other testamentary scripts than those produced in any proceeding for probate. . . .

"It would, I venture. to think, be an absurd condition of the law if the rule were otherwise. To be compelled to decree a probate of an earlier will produced, when it is alleged and admitted that there exists a later will not produced, would be productive of public mischief. . . .

"In the ecclesiastical courts recognized by the common law, and according to Coke himself part of the common law, when a paper was propounded as a will, and there was an allegation of a separate paper revoking the will, it was in the power of a judge of a court of probate to admit · some of the papers and refuse probate to others." (Citing authorities.)

And the same opinion says: "Formerly the ecclesiastical judge could order all testamentary papers to be pro-

duced in court in a proceeding to probate any one of them.''

The same principle is recognized in the cases of *In re Horton's Will,* 163 App. Div., 213, 148 N. Y. S., 18, *Floore v. Green* (Ky.), 83 S. W., 133, and *Hoskins v. Holmes County Community Hospital,* 135 Miss., 89, 99 So., 570.

Examining some of the English cases referred to in the opinion of *In re Horton's Will,* we find that the case of *Griffin v. Ferand,* 1 Curteis, 97, 163 English Reprint, p. 33, is a very short opinion where wills and codicils were offered and considered at the same time.

The case of *Kellican v. Lord Palmer,* 1 Lee, 659, 161 English Reprint, 241, is a case holding that in probate proceedings all testamentary papers should be offered.

From these decisions and authorities it appears that the text-writers referred to approve the practice followed by the trial judge, that the judgments of other courts, in some instances, have recognized it and approved it, and that this court has at least had similar cases before it, without expressing disapprobation.

It further appears that public policy demands that such a practice should be approved, unless there is something in the statute itself that prohibits it.

The circuit court sits as a court of original jurisdiction in all such contests. The county court is merely the court in which the contests are initiated. The contests are initiated whenever any one's will is offered for probate and contested. The filing of the contest automatically transfers jurisdiction from the county court to the circuit court. *Murrell v. Rich.* The scene of action in the probate of a will is transferred at once to the circuit court, when the first contest proceeding is filed, and all

proceedings in the county court are, by virtue of the filing of a contest, vested within the jurisdiction of the circuit court, even without the formalities of following the statutory provisions for removal. *Murrell* v. *Rich.*

In *Murrell* v. *Rich,* supra, this court said: ''Another question made by contestants upon the jurisdiction of the circuit court is, as they say, that the case was appealed to the circuit court. It is true that an appeal was taken from the judgment of the probate court, but it is a mistake to suppose that the cause was carried into the circuit court by virtue of the appeal. That court acquired jurisdiction, as we have already pointed out, by virtue of the terms of the statute, and the fact that an appeal was taken from the clearly erroneous judgment of the probate court did not defeat the jurisdiction of the circuit court over the subject-matter; jurisdiction of the parties was had by their voluntary and unlimited appearance.''

In that case, in reference to construction, it was said: ''It is obvious this section contains only directions to the county court, which the county court is bound to obey, and which, if neglected or refused by them, might be enforced by the circuit court by virtue of its supervisory power over inferior tribunals, either by *certiorari* for a complete record, or in a proper case by mandamus; but how such failure on the part of the county court or its clerk could be a matter affecting and defeating the jurisdiction of the circuit court to make up and try an issue of *devisavit vel non* we are not able to see.''

If the provisions in reference to removing the proceedings in the contest of a will from the county court

to the circuit court were merely directory, by the same reasoning, this court, in interpreting the statutes governing the practice after the case reaches the circuit court, should follow the same rule of interpretation. While it is true that the language of the statute merely mentions the will, there is nothing in the statute which prohibits this court from saying that that simply meant that all matters pertaining to the establishment of the true and legal will of the testator were vested within the jurisdiction of the circuit court.

We are of opinion that both by reason and authority, when there is a contest of a will offered for probate, and the circuit court takes jurisdiction, it takes jurisdiction for the purpose of once for all determining as to whom the testator's estate shall go. The proceeding is a proceeding *in rem,* involving the distribution of the *res,* the estate. All persons who have any claim of interest, as heirs or next of kin, or the beneficiaries of other wills may lawfully intervene. In such a proceeding, it is certainly the proper practice to permit the propounding of other wills than the will first offered for probate, and against which a contest was instituted, and to permit the jury, under proper instructions, to determine which of the wills is the will of the decedent.

The court of appeals erred in sustaining assignments of error Nos. 12 and 25, and remanding the cause to be reheard in the circuit court of Wilson county, with only one will submitted to the jury at one time.

For these reasons, the judgment of the court of civil appeals is reversed, and the judgment of the circuit court of Wilson county is affirmed.

ON PETITION FOR REHEARING.

This cause was decided at a former day of this term, and a petition to rehear has been filed.

An examination of the petition to rehear discloses the fact that, in so far as the questions before the court for decision are concerned, no new authorities are presented. A large number of cases are cited on various questions more or less pertinent to will contests, but none of the cases involves the question now before the court. Every one of the new cases has been examined, and none of them militates against the opinion rendered by this court at a former date.

The broad statement in the petition that the will is the *res,* is unsupported by any case cited by the petitioner, or found in the books, and is contrary to the decisions of this State, as cited in the opinion delivered at a former day of this term.

The only point in the petition to rehear that suggests a new question, is this: In the petition to rehear, it is insisted that when the court of civil appeals sustained assignments of error Nos. 12 and 25, made by the plaintiff in error, the judgments sustaining these assignments necessarily involved and adjudged several other assignments submitted to the court of appeals, as, for example, assignment No. 2, which was an assignment of error in regard to a portion of the charge of the trial judge.

Under the well-settled practice in this court, the court of appeals only having passed on two assignments of error, and having sustained them, and having pretermitted all other assignments of error, this court has no jurisdiction to pass upon the soundness or unsoundness of the pretermitted assignments. Had counsel for plain-

tiff in error in the court of appeals regarded these assignments as important, then there was a clear way open to them under the established rules of practice laid down in a number of cases. They should have called these pretermitted assignments to the attention of the court of appeals, and, after that court had acted upon them, they could have filed their own petition for *certiorari,* bringing this case into this court in order to review the action of the court of appeals in that respect. Having failed to follow this course, it is too late now for the question to be raised as to the correctness or incorrectness of the trial judge's attitude in these particulars.

For these reasons, the petition to rehear is dismissed.