FIRST NATIONAL BANK.OF WALDRON *v*. ARY.

Opinion delivered February 10, 1930.

*O. R. Smith, A. F. Smith* and *Evans & Evans,* for appellant.

*Sam T. Poe, Tom Poe, McDonald Poe, Duke Frederick, W. A. Schofield, Lee J. Lewis, W. A. Bates, Holmes, Canale, Loch & Glanker* and *Hamilton E. Little,* for appellee.

SMITH, J. This case involves a contest of the will of W. B. Turman, who died at the age of eighty-seven without having married. He had for a number of years been the president of the First National Bank of Waldron, and was serving in that capacity at the time of his death, and, while he owned only a small amount of the stock, he carried a large deposit in the bank. Upon his death his will was probated in common form, without notice to his heirs. By the terms of his will, Turman gave $1 to all persons related to him within the fourth degree, and the remain-

der of his estate was devised to the bank of which he had been president.

Five separate appeals were prosecuted from the order of the probate court admitting the will to probate, all of which were perfected in the manner provided by the statute. Section 2258, C. & M. Digest. One of the appellants was Dona Ary, who alleged that she was the illegitimate—but adopted—daughter of the decedent. The others were second cousins, or the descendants of second cousins, who were shown to be the next of kin. These claimants are divided into two groups, one tracing their kinship through the decedent's paternal line, the other through the maternal line, and these latter claim that they are the sole heirs at law, for the reason that the estate in question is an ancestral one which came to the decedent through his mother. Dona Ary claims the entire estate, to the exclusion of both sets of heirs, upon the theory that, having been adopted as a daughter, she is the sole heir at law. She claims that she was adopted pursuant to the act of January 12, 1853, which appears as §§ 3493 and 3494, C. & M. Digest, and that the declaration of that fact, for which the statute referred to provides, was duly recorded, but that all the records of the county were destroyed by a fire. A *prima facie* showing to this effect was made before the court.

Numerous motions were filed in the case, which we find it unnecessary to discuss in detail, as the purpose of all of them was to require the contestants to settle their conflicting claims before being allowed to contest the will. These motions were overruled, and the will was contested in the circuit court, upon the appeal from the probate court, upon the grounds that the testator lacked testamentary capacity to make a will, and had been unduly influenced in its execution.

There was a preliminary hearing before the court, upon which much testimony was taken, touching the rights of the contestants to oppose the probate of the will, and the court, without passing upon the respective merits of

the conflicting claims, held that all of them had made a *prima facie* showing of an interest in the estate, which gave them the right to resist the probate of the will. The court consolidated all the appeals into a single case, and a jury was impaneled to determine the validity of the will. The jury found against the will, and, as the testimony upon which this finding was made has not been abstracted on this appeal from that judgment, it will be conclusively presumed that the testimony supported the verdict of the jury, and the judgment thereon to the effect that Mr. Turman had died intestate.

For the reversal of this judgment, it is very earnestly insisted that it was prejudicial error for the court to have permitted these conflicting interests to make common cause in an attack upon the will, and that the court should have required these claimants to contest separately or to have first litigated among themselves the merits of their respective claims.

We do not agree with learned counsel in this contention. Certainly it is not the policy of the law to permit five separate contests of a will. There was either a will or there was none, and this was the only question involved on the appeal from the probate court, and as each contestant raised this question and no other, it was entirely proper to consolidate these separate appeals, and to try them as a single case. Section 1081, C. & M. Digest. There was an order and judgment of the probate court admitting the will to probate, which bound all persons until that judgment was set aside. It would, therefore, have been an anomalous practice to have required these claimants, whose interests under the will were merely nominal, to first litigate the merits of their respective claims, while a valid order probating the will was outstanding, which will practically exclude all of them from any participation in the distribution of the estate. Dona Ary took nothing under the will, and the other claimants only $1 each, and until it had first been determined that there was no will, there was no occasion for them to litigate with

each other. The time within which any of them could appeal might have expired before the question of their relative rights could be adjudicated.

The trial in the court below was had under § 10,525, C. & M. Digest, which provides that ''When the proceeding is taken to the circuit court, all necessary parties shall be brought before the court; and, upon the demand of any one of them, a jury shall be impaneled to try which or how much of any testamentary paper produced is or is not the last will of the testator.''

The question for trial, therefore, was, how much, if any, of the testamentary paper produced was or was not the last will of the testator? and the question was not how the estate should be distributed if the will was not valid. That question did not then arise, and has not yet arisen. All of the appellants from the probate court were necessary parties, and should have been brought before the court if they had not voluntarily come through their appeals from the probate court, as a proceeding was about to be had which would be conclusive of their rights to an interest in the estate.

''An heir at law may contest without any other showing of interest than heirship, so may the widow, legatees, devisees, beneficiaries under a trust, assignees of legatees, claimants under prior or subsequent wills. Borland on Wills and Administration (enlarged ed.), pp. 210-211.

All the contestants made a *prima facie* showing of heirship, and of an interest adverse to the will, and upon this showing they were entitled to contest the will. None of them has asked that the estate be distributed, nor could they do so in this proceeding, as the sole question to be tried on the appeals from the probate court was, How much of the testamentary paper produced is or is not the last will of the testator?

By § 216, C. & M. Digest, it is provided that ''No executor or administrator shall be compelled to pay legacies or distributive shares, unless the same are of a perishable nature or subject to injury, until two years

after the date of his letters, unless ordered by the court so to do; and not then until bond, with good and sufficient security, be given by the legatee, or distributee, to refund his proportion of any debt which may afterward be established against the estate, and the costs attending the record thereof.''

When the time thus provided by law for the distribution of the estate arrives, these conflicting claims will then be heard upon that question; but, before that question could be properly determined, it was necessary, first, to determine whether there was a will, and this is the only question which § 10525, C. & M. Digest, provides shall be determined upon the appeal from the probate court.

The cases of *Flowers* v. *Flowers*, 74 Ark. 212, 85 S. W. 242, and *Brackville* v. *Holt*, 153 Ark. 248, 239 S. W. 1059; are decisive of the question here presented.

The Flowers case arose under facts which are very similar to those of the instant case. There Josephine Flowers claimed to be a child and sole heir at law of the testatrix, while Baldwin and two others who joined in the contest denied the legitimacy of the alleged daughter, and claimed that, there being no legitimate child, they were the sole heirs at law. In that case testimony was offered on the question of the legitimacy of Josephine Flowers, and the court said:

''It is next argued by counsel for appellants, that the court erred in submitting to the jury the question of the legitimacy of appellant, and they contend that the statute limits the submission to the sole question, 'which or how much of any testamentary paper produced is or is not the last will of the testator.' Kirby's Digest, § 8041. It is only persons who are interested in the estate of a decedent who can be heard to contest a proposed will; and if an issue be made as to the right of contestant to appear for that purpose, it becomes necessary for the court to determine that question. In this kind of a proceeding the jurisdiction of the probate court, and of the circuit court on appeal, is limited to the sole question as

to whether or not the proposed instrument shall or shall not be admitted to probate as a will; but, for the purpose of ascertaining the rights of the parties to contest, the court may inquire into the interest of the contestant as a preliminary question. *Brogan* v. *Brogan,* 63 Ark. 405, 39 S. W. 58; Works on Courts and Jurisdiction, p. 441; Brown on Jurisdiction, § 146.

"The better practice is, we think, for the court to settle such incidental or preliminary question before the trial of the main issue, rather than to submit them all together; but this is a matter left to the sound discretion of the trial judge, and we cannot say there has been any abuse of that discretion, or any prejudice resulting therefrom to the appellants. They, having raised the issue as to the legitimacy of appellee, thereby challenging her right to contest the will, and having taken the initiative in producing proof tending to show her illegitimacy, cannot now be heard to complain of the court's action in submitting the question to the jury to be determined from the proof."

Here the trial court did what was there said to be the better practice. It was determined by the court as a preliminary matter that all the contestants had made a *prima facie* showing adverse to the will, and upon this showing they were all permitted to join in its contest, and to try the question, "which or how much of any testamentary paper produced is or is not the last will of the testator?"

Numerous cases are cited in the briefs of appellees, which are in harmony with the views of this court expressed in the cases above cited, but the value of those cases depends upon the similarity of the statutes construed to the statutes of this State, for the reason that the contest of a will is a statutory proceeding.

We call attention, however, to the case of *Lillard* v. *Tolliver,* 154 Tenn. 304, 285 S. W. 576, in which the authorities are reviewed at length. The procedure in contests over wills is similar under the statutes of Ten-

nessee to the procedure in this State. The court there held that the filing of a will contest transferred the proceeding to the circuit court to ibe there heard as an original—and not an appellate—proceeding, and that all persons interested, either for or against the will, had the right to be made parties to the suit, and that strict common law rules relating to adversary proceedings between parties would not be enforced, but that most liberal rules admitting parties would prevail. It was there further held that public policy required the courts to shorten, as far as possible, litigation involving estates of decedents, and that claimants or persons having any possible interest in the estate of the decedent are proper parties in a will contest.

It having been determined that there was no will, the contestants may now litigate in an appropriate manner the validity of their respective claims.

Certain other questions have been raised as to the trial of the cause at an adjourned term, and the refusal of the court to change the venue; but there does not appear to have been any abuse of discretion in the ruling of the court in either of these matters.

As no error appears in the proceeding from which this appeal comes, the judgment must be affirmed, and it is so ordered.